## CRAVEN v. UNITED STATES.

Circuit Court of Appeals, First Circuit.
November 19, 1927.

No. 2132.

1. **Criminal law ⟨key⟩1134(10)—Facts and reasons stated in affidavit of prejudice against judge are to be considered by reviewing court (Jud. Code, § 21 [28 USCA § 25]).**

Under Judicial Code, § 21 (28 USCA § 25), providing that an affidavit of prejudice against a judge shall state the facts and reasons which induce affiant's belief, such alleged facts and reasons are to be considered by a reviewing court.

2. **Judges ⟨key⟩49(1)—Prejudice, to require recusation of judge, must be "personal prejudice," and not judicial, and judge's conviction, based on evidence at former trial, is not personal prejudice.**

Prejudice, to require recusation of judge, must be "personal," and not judicial, and conviction of a judge of the guilt of a defendant, based on the evidence at a former trial, is not a "personal prejudice," which requires his recusation.

3. **Conspiracy ⟨key⟩38—In prosecution for conspiracy to smuggle liquors, it is not a defense that defendants were deceived and liquor was in fact of domestic origin.**

Under an indictment for conspiracy to smuggle liquor in violation of the customs laws, it is not a defense that defendants were deceived and the liquor was in fact of domestic origin.

In Error to the District Court of the United States for the District of Massachusetts; George F. Morris, Judge.

Criminal prosecution by the United States against Thomas Craven. Judgment of conviction, and defendant brings error. Affirmed.

William H. Lewis, of Boston, Mass. (Matthew L. McGrath, of Boston, Mass., on the brief), for plaintiff in error.

John V. Spalding, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U S. Atty., of Gloucester, Mass., on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. Craven, with 19 others, was indicted for conspiracy to commit an offense against the United States by importing at Boston whisky and beer without paying the customs duties thereon. The case was tried twice. Before the second trial 15 of the defendants pleaded guilty. Craven was the only defendant at the second trial. He was convicted and sentenced to two years at Atlanta, and to pay a fine of $1,000. The case comes here with a record containing 14 assignments of error, of which the first and third are expressly waived. The main reliance is upon the second, which involves the refusal of the presiding judge, upon an affidavit of prejudice, to recuse himself. This assignment is urgently pressed, both orally and on the brief.

Craven's affidavit, filed February 3, 1927, with the requisite certificate of counsel, somewhat abbreviated, is to the effect that under the indictment for conspiracy above outlined he was brought to trial on January 26; that on February 2 the jury was discharged from further consideration of the case, and the case set for retrial on February 8; that during the trial the presiding judge exhibited against him a personal bias and prejudice, and a personal bias and prejudice in favor of the United States; that affiant believes that said judge had at the previous trial, and still has, a personal bias against him.

The stated reasons for the affiant's alleged belief are:

(1) That at about 7 p. m. on February 1 the jury returned a verdict of disagreement as to the affiant; but the judge refused to accept the verdict, and sent them back with an admonition that, "if they were honest men, and he assumed that they were honest, to go out and bring in a verdict," and intending to force and coerce the jury into a different verdict against your affiant than the one the jury had rendered, he kept them out all night, until 10 o'clock on Wednesday, February 2, and then dismissed them.

(2) That, when the jury returned with a verdict of disagreement, the judge inquired if they wanted instructions, and in response to a question from the foreman as to whether the jury must find beyond reasonable doubt that the defendant was the man who indorsed "T. Craven" on a draft for $5,000, the judge answered, "No," and charged the jury in substance that there was no reasonable doubt that the defendant signed the draft; "that the temper and manner of the judge in so sending the case back to the jury, and giving the additional charge, which he had solicited, was unjudicial in character, partisan in the extreme, and prejudicial to a fair and impartial trial, to which he is entitled under the law of the land."

(3) That during the trial of the indictment against him before the jury the judge exhibited a partisan and unjudicial spirit, in that while his counsel was arguing the question as to the identity of the person who indorsed the draft, held it up to the light, and dangled it before the jury, and during his charge to the jury, referring to the defendant's failure to take the witness stand, he used the following phrase: "The defendant Craven has not seen fit to take the witness stand," and, while telling the jury they could draw no inference against him by reason thereof, clearly indicated to the jury that he thought otherwise.

(4) That during the course of said trial he exhibited personal bias and prejudice against your affiant and in favor of the United States of America by questions the court asked the witnesses upon the stand.

(5) "That during the trial the judge was in conference with the assistant United States attorney, out of the presence of the defendant, thereby exhibiting a personal bias and prejudice against the affiant."

(6) Your affiant believes that said judge has a personal prejudice and bias against him, and in favor of the United States of America, in that he, said judge, exhibits a violent prejudice against all defendants charged with violation of the liquor laws, as indicated by excessive fines and penalties imposed in various cases by him, and your affiant, being charged with an offense against the liquor laws, as indicated, is subject to his personal bias and prejudice.

(7) Your affiant believes that said judge, designated to sit in the trial of the indictment against him in this district, cannot and will not give him a fair and impartial trial, and that he will use every effort within his power to secure his conviction, and his manner of dismissing the jury and setting the case down for a new trial indicated a partisan intention to secure a conviction of your affiant at all hazards.

(8) Affiant states that the reason for not filing this affidavit ten days before the beginning of the term of court at which his trial was set is that he did not know that the

said judge was to preside at said trial, and the date set for a new trial was less than 10 days from the discharge of the jury in the first trial referred to above.

The presiding judge, under a fitting and common practice, referred the sufficiency of this affidavit to another District Judge, who held it insufficient.

The presiding judge accepted this conclusion of his colleague, and presided at the second trial.

The general subject of the disqualification of judges is elaborately treated in Moses v. Julian, 45 N. H. 52, 84 Am. Dec. 114; in 23 Cyc. 575, particularly 582 et seq., and in 33 C. J. 988, 1014.

[1] But the question here presented turns upon the construction and application of section 21 of the Judicial Code, enacted in 1911 (28 USCA § 25). Berger v. United States, 255 U. S. 22, 37, 41 S. Ct. 230, 65 L. Ed. 481.

It is settled that under this statute the sufficiency of the affidavit must be determined on the basis of "the facts and the reasons for the belief that such bias or prejudice exists." Ex parte Am. Steel Barrel Co., 230 U. S. 35, 43, 44, 33 S. Ct. 1007, 1010 (57 L. Ed. 1379).

The same doctrine was stated in Berger v. United States, 255 U. S. 22, 33, 41 S. Ct. 230, 233 (65 L. Ed. 481), in the majority opinion by Mr. Justice McKenna: "Of course, the reasons and facts for the belief the litigant entertains are an essential part of the affidavit, and must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." This court, in Keown v. Hughes, 265 F. 573, 577, stated the rule as follows:

"The provision in the statute, to the effect that 'such affidavit shall state facts and reasons for the belief that such bias or prejudice exists,' is meaningless, unless construed to require the plaintiff, under oath, at least to assert facts from which a sane and reasonable mind may fairly infer bias or prejudice."

Passing the government's contention that the affidavit was filed too late, under the provision that "such affidavit shall be filed not less than 10 days before the beginning of the term of the court, or good cause shall be shown for the failure to be filed within such time," we proceed to an analysis of the facts and the reasons stated:

There is in the affidavit no intimation that prior to the first trial the presiding judge had any bias or prejudice, personal or other, against the defendant. So far as appears, he had never heard of him or his alleged offense. All that is indicated is that at the first trial, on the basis of the evidence there adduced, the presiding judge acquired and exhibited before the jury (which nevertheless disagreed) a view that the defendant was guilty. Not even this clearly appears, for the allegations in the first and second paragraphs are as consistent with the view that the judge regarded the evidence such as to require a competent jury to agree on a verdict, as with the view that he thought that the jury should have found the defendant guilty. Perhaps we should assume that the third paragraph does indicate that the judge then indicated to the jury that the evidence warranted, if it did not require, a verdict of guilty. But a judge has a right to expect and to urge a jury to agree to a verdict, if the evidence calls on reasonable men to reach an agreement, whether for or against the guilt of the defendant.

There is nothing in the fourth and fifth paragraphs of the affidavit. A general and epithetical charge of bias, by questions not set forth, is idle. Equally frivolous is the contention that the judge in charge of a criminal calendar cannot confer with an assistant United States attorney without grounding an inference of improper scheming against the right of the defendant to a fair and impartial trial. We are surprised that experienced counsel should have certified an affidavit containing such a charge.

The sixth paragraph, asserting personal bias against persons charged with violation of the liquor laws, alleged to be indicated by excessive fines and penalties, is without significance; for (among other reasons) the actual fines and penalties imposed by the judge are not stated, and, if they had been stated, no possible inference would be warranted that they were "excessive," without detailed knowledge of the nature of the offenses for which they were imposed.

The seventh paragraph is purely prophetic, and adds nothing of fact or reason. [2] At most, then, the affidavit charges a "bias and prejudice," grounded on the evidence produced in open court at the first trial, and on nothing else. We hold that such bias and prejudice (if these be appropriate terms for a well-grounded state of mind, 255 U. S. 42, 41 S. Ct. 236, 65 L. Ed. 481) is not personal; that it is judicial. "Personal" is in contrast with judicial; it characterizes an attitude of extra-judicial origin, derived non coram judice. "Personal" characterizes clearly the prejudgment guarded against. It is the significant word of the statute. It is

the duty of a real judge to acquire views from evidence. The statute never contemplated crippling our courts by disqualifying a judge, solely on the basis of a bias (or state of mind, 255 U. S. 42, 41 S. Ct. 236, 65 L. Ed. 481) against wrongdoers, civil or criminal, acquired from evidence presented in the course of judicial proceedings before him. Any other construction would make the statute an intolerable obstruction to the efficient conduct of judicial proceedings, now none too speedy or effective.

On the theory now urged, no judge could be qualified to sit at two trials of the same case. It makes no difference whether the second trial results from a disagreement, grounded on the incompetence or even the corruption of the jury, or from the allowance by the presiding judge of a motion for a new trial, or from error maintained in a court of review. If, from the first trial, the judge acquires a bias or state of mind for or against either party, as of course he must, he is disqualified.

The destructive results of broad and loose construction of such statutes were considered by Judge (afterwards Mr. Justice) Brewer more than 50 years ago, and stated in his opinion in City of Emporia v. Volmer, 12 Kan. 622, 627. There dealing with a similar statute, which involved also a change of venue, the judge said:

"Every defendant closely pressed would seek delay in this manner. A change of venue is a wrong to the public, unless the necessities of justice to the defendant require it. It works delay. It causes expense. It endangers a prosecution. A defendant is easily persuaded of the prejudice of the judge. Adverse rulings convince him of the fact, as shown by the case of Burke v. Mayall, 10 Minn. 287 [Gil. 226]. It seems to us, therefore, that this is the true rule: That such facts and circumstances must be proved by affidavits, or other extrinsic testimony, as clearly show that there exists a prejudice on the part of the judge toward the defendant, and, unless this prejudice thus clearly appears, a reviewing court will sustain an overruling of the application, on the ground that the judge must have been personally conscious of the falsity or nonexistence of the grounds alleged. It is not sufficient that a prima facie case only be shown, such a case as would require the sustaining of a challenge to a juror. It must be strong enough to overthrow the presumption in favor of the trial judge's integrity, and of the clearness of his perceptions. See, as going beyond the views herein expressed, the cases of Hungerford v. Cushing, 2 Wis. 397; [Table Mountain Gold & Silver Min. Co. v. M. Waller's Defeat Silver Min. Co.] 4 Nev. 218 [97 Am. Dec. 526]. And as sustaining these views, Gordon v. State, 3 Iowa, 412; State v. Ingalls, 17 Iowa, 10; Boswell v. Flockhart, 8 Leigh [Va.] 364; People v. Williams, 24 Cal. 31."

While it is settled that the truth or falsity of the facts alleged is not open to review (Berger v. United States, 255 U. S. 22, 41 S. Ct. 230, 65 L. Ed. 481), it is significant that the danger of abuse arising under that construction of the statute is so great as to evoke powerful dissent from Justices Day and Pitney, and in a separate dissent by Justice McReynolds, 255 U. S. 38, 40, 42, 41 S. Ct. 234, 235, 236, 65 L. Ed. 481.

If, as happened in many of the cases reported, this statute is permitted to be used by overzealous counsel, scanting their professional duty to the public weal and to the court as the protector of the public right, as a method of procuring delay (U. S. v. Fricke [D. C.] 261 F. 541), and in many instances a new trial before a judge who must approach, de novo, problems already considered by another judge (Ex parte Am. Steel Barrel Co., 230 U. S. 35, 44, 33 S. Ct. 1007, 57 L. Ed. 1379) the statute will leave immune from attack only the amorphous dummies reprobated by Mr. Justice McReynolds as unbecoming receptacles for judicial power (255 U. S. 43, 41 S. Ct. 236, 65 L. Ed. 481). Only the timid and the incompetent, if there be now or hereafter any such on the federal bench, will be free from attack under this statute.

The presiding judge was not disqualified.

The second assignment is appropriately referred to by Craven's counsel as the vital one of the case; this appears to imply that the others are not. At any rate, we find them to be so. Most of them relate merely to rulings on evidence.

A bare outline of the case is here appropriate:

In the conspiracy charged and proved by the government, Craven was the leader. The evidence showed that in April, 1925, he met Burton and others at the Hotel Rossmore in Boston. Burton was the head of a steamship line which operated the steamship Van. Craven then arranged with Burton to pick up off the Maine coast a load of liquor from another boat, to be marked pickled fish. For these services Craven was to pay Burton $10,000. The liquor was to be landed in Boston, and in whole or in part transshipped to New York. Various overt acts are alleged and proved. About 3,000 cases of liquor were thus loaded on the Van and landed in

Boston. Briefly stated, it was a conspiracy for rum-running on a large scale; the conspirators were caught.

Turning, now, briefly to the other assignments of error: Burton, a co-conspirator, called by the government, was permitted to testify as to matters occurring after the liquor had been landed in Boston. The evidence was objected to on the familiar ground that acts and declarations of a co-conspirator, after the completion of the conspiracy, are admissible against him only. Logan v. U. S., 144 U. S. 263, 12 S. Ct. 617, 36 L. Ed. 429.

But the offense which they conspired to commit was not then completed. The conspiracy covered, not merely landing the liquor in Boston, but so shipping or concealing it as to escape duties or seizure for unpaid duties. Transshipment to New York was a part of that offense. The rule invoked is not applicable.

The defendant called another co-conspirator, Titus, who undertook to deny his presence at the Rossmore Hotel when there was a talk between Craven and Burton relative to Craven's paying Burton $10,000 for bringing in this liquor. The defendant objected to the cross-examination, on the ground that it was upon matters outside of his direct examination. But it was not. The cross-examination elicited evidence from Titus quite contrary, in effect, to his testimony on direct. It appeared on cross-examination that Titus was the purser to whom Craven had delivered an envelope containing a large sum of money, and that on telephone directions from Craven he had delivered to Burton either $1,000 or $2,000. The cross-examination was therefore eminently appropriate, even under a strict construction of the federal rule.

To the same general effect was the objection to cross-examination of Craven, who took the stand and undertook so to limit his cross-examination as to allow his general and flat denials to go unaffected. The rulings made were well within the discretionary power of the trial judge. See Wills v. Russell, 100 U. S. 621, 625, 25 L. Ed. 607. Post Publishing Co. v. Peek (C. C. A.) 199 F. 6, 25.

We have examined the other exceptions to the rulings on evidence, and find them without merit.

[3] Finally, the fourteenth assignment of error is that "the district court erred in instructing the jury that, upon the charge contained in the indictment, the government must establish that the liquor was brought in from the outside, from a foreign country,

22 F.(2d)—39

or that the defendants believed it was imported."

This assignment is without merit. The gist of the crime charged and proved was conspiracy, and not importing; a conspiracy to smuggle foreign liquor would be made out, even if (as there was no substantial evidence to show) in effecting the conspiracy the conspirators had been imposed upon by the substitution of liquor of domestic origin. See Williamson v. U. S., 207 U. S. 425, 447, 28 S. Ct. 163, 52 L. Ed. 278. United States v. Rabinowich, 238 U. S. 78, 85, 86, 35 S. Ct. 682, 59 L. Ed. 1211.

The court charged:

"As these defendants are charged with a conspiracy to import into this country dutiable goods in violation of section 593b of the Tariff Act, in order to sustain a conviction you must find that this liquor was imported into the United States from a foreign country, or that in conspiring to bring in the whisky the defendants believed it to be of foreign manufacture. If the defendants were deceived, it does not mitigate the crime."

This was sufficiently favorable to the defendant.

The judgment of the District Court is affirmed.