## LAUGHLIN v. UNITED STATES.
### No. 8757.

United States Court of Appeals
District of Columbia.

Argued March 26, 1945.

Decided April 30, 1945.

Rehearing Denied May 8, 1945.
Writ of Certiorari Denied Dec. 10, 1945.
See 66 S.Ct. 265.

Mr. James J. Laughlin, of Washington, D. C., appellant, in proper person.

Mr. Philip R. Miller, Special Attorney, Department of Justice, of Washington, D. C., with whom Messrs. O. John Rogge and Joseph W. Burns, Special Assistants to the Attorney General, were on the brief, for appellee.

Before GRONER, Chief Justice, and LAWS* and MORRIS,* Associate Justices.

PER CURIAM.

Appellant is a member of the Bar and in April, 1944, represented Robert Noble and Edward J. Smythe, two of thirty defendants then on trial in the United States District Court in Criminal No. 73086, generally called the "Sedition Case." The trial was begun April 17, 1944, and on April 26th, and before a jury had been secured, appellant filed in the court, with his certification of good faith, the affidavit of his client Noble, charging presiding Judge Eicher with personal bias and prejudice.[1] Immediately thereafter Judge Eicher, on petition of prosecuting counsel and on his own motion, entered an order directing appellant to show cause before Judge Bailey, of the same court, why he should not be adjudged in contempt. Appellant filed his answer and on May 2nd the hearing was begun, and on May 10th Judge Bailey adjudged appellant guilty, imposed a fine and directed that he be committed until the fine was paid. This appeal followed.

The petition for the show cause order, in addition to charging appellant with making scurrilous accusations against the Judge —in the affidavit of bias[2]—, charged also the untimely submission, contrary to a ruling of the court, of sundry motions for leave to summon witnesses at the expense of the Government, and with giving information to the newspapers of their con-

---

* District Judges sitting by designation.

[1] Title 28 U.S.C.A. § 25: "Affidavit of personal bias or prejudice of judge. Whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein, but another judge shall be designated in the manner prescribed in section 24 of this title, or chosen in the manner prescribed in section 27 of this title, to hear such matter. Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term of the court, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one such affidavit; and no such affidavit shall be filed unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith. The same proceedings shall be had when the presiding judge shall file with the clerk of the court a certificate that he deems himself unable for any reason to preside with absolute impartiality in the pending suit or action."

[2] The affidavit charged, *inter alia*: "* * * that some two years or more ago the President of the United States called the Attorney General Francis Biddle to the White House and directed that the said Francis Biddle initiate the prosecution herein and that the said Francis Biddle informed the President that there was no possibility of obtaining a conviction even though indictments were returned. At that time, defendant [Noble] says upon information and belief, the President of the United States stated to Francis Biddle: 'Well, you are not the judge, and remember I will pick the judge,' and says that the President appointed the Honorable Edward C. Eicher to his present post on January 23, 1942, and Judge Eicher took office February 3, 1942.

"Defendant says that Judge Eicher is so closely connected with the President of the United States and such a strong partisan of the New Deal Administration that he will do his utmost to please the President of the United States and will endeavor insofar as he possibly can to bring about a conviction herein.

"Defendant says upon information and belief that Chief Justice Eicher has been promised by the President of the United States a reward if this prosecution is successful and such reward will be in the nature of an Appellate Judgeship in the Eighth Judicial Circuit or possibly a Judicial berth on the Supreme Court of the United States."

tents, with the intent to influence prospective jurors and thus to obstruct the due administration of justice. Appellant's answer to the rule admits the filing of the affidavit and submission of the motions, but insists that all were in good faith and that no prospective juror was in fact influenced by subsequent newspaper accounts, and that appellant himself did not, in any of the acts or things done by him, intend to be "contemptuous of the court, or to reflect upon the court, or to impede or obstruct the administration of justice."

Judge Bailey, at the conclusion of the hearing, found that the affidavit seeking to disqualify Judge Eicher was purposely withheld until appellant "found how the case happened to be going against his clients," and was then filed to embarrass the trial; and that appellant's untimely motions for subpoenas and his activities to ensure publication of their contents were all part and parcel of a purpose to disqualify prospective jurors.

In this court appellant insists the adjudication of contempt should be set aside on the following grounds: (1), that Judge Bailey erred in hearing and deciding the proceeding in the face of an affidavit of bias and prejudice which appellant had filed against *him*; (2), that the petition for the order to show cause not being verified was invalid; (3), that appellant was entitled to jury trial on the issue of his guilt; (4), that his sworn answer denying intent purged him of contempt, if any was shown; and (5), that the evidence was insufficient to sustain a conviction.

Taking up these several assignments in the order we have stated, we come first to consider the effect of the affidavit against Judge Bailey. As to this it appears that the hearing by Judge Bailey on Judge Eicher's order to show cause was set for May 2nd. Just prior to the convening of court appellant handed to one of the deputy clerks an affidavit in the usual form, in which he charged that Judge Bailey had in 1937, in a then pending disciplinary proceeding, voted to suspend appellant from the practice of law without hearing, and on that occasion had made derogatory statements of him to the effect that he believed him guilty of certain criminal charges of which appellant had been convicted, but on which, after reversal in this court, he was tried and acquitted.

We find it unnecessary to decide whether, even if these things were true, they were enough to require Judge Bailey's disqualification.[3] For in any case the circumstances, which we shall mention, were such as properly to deprive the affidavit of the right to consideration. Shortly stated, these were that on the morning of the hearing and before the convening of court, appellant handed to the clerk the affidavit seeking to disqualify Judge Bailey, which he then and there swore to. The clerk marked the paper "Filed," but appellant in some way, which is not quite clear, withdrew it and took it with him and kept it in his possession *and made no mention of it thereafter at the hearing* which followed, and in which appellant actively engaged, first, in moving on technical grounds to quash the show cause rule; then in demanding jury trial, which after hearing was refused, and then in requesting a continuance, which was granted. On resumption of the hearing two days later, Judge Bailey, before proceeding, stated to appellant that the clerk had that morning notified him that appellant had previously sworn to an affidavit of prejudice, but had withdrawn it from the files and had not returned it until the preceding afternoon, and then only at the clerk's request. Appellant answered that it was true he had handed the paper to the clerk and made the oath and that the clerk had stamped it "Filed," but that this latter fact he had not realized until he got back to his office. He explained that the action of the clerk in stamping the affidavit filed was due, perhaps, to the fact that "she probably assumed when I took the oath it [the affidavit] was intended to be filed." The statement we have quoted explains how the paper mistakenly got into the files, but leaves unexplained how it got out. However, enough appears to justify our concluding, as we do, that appellant's answer to Judge Bailey is consistent only with the theory that he had not at the time intended to file the affidavit and that it was only because the clerk, mistakenly,—or perhaps

[3] Ex parte American Steel Barrel Co., 230 U.S. 35, 43, 44, 33 S.Ct. 1007, 57 L. Ed. 1379; Berger v. United States, 255 U.S. 22, 33, 41 S.Ct. 230, 65 L.Ed. 481; Craven v. United States, 1 Cir., 22 F.2d 605; certiorari denied 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739.

prematurely—marked it "Filed" that he felt constrained to return it. Accordingly, we are of opinion that the recovery of the paper—even if we may consider it as *then* filed—was not in compliance with the "time" provision of the statute. The paper shows on its face that the alleged bias on which disqualification was sought had been known to appellant for years. His action, therefore, in deliberately holding back the filing until after the first day's proceedings and after Judge Bailey had ruled on sundry matters, and after he had, at appellant's request, granted a continuance, was not only not a showing of good cause for the delay, but, as the Judge properly held, a waiver of appellant's statutory right to a consideration of the affidavit. Skirvin v. Mesta, 10 Cir., 141 F.2d 668; Refior v. Lansing Drop Forge Co., 6 Cir., 124 F.2d 440; Chafin v. United States, 4 Cir., 5 F.2d 592.

As little need be said of Judge Bailey's adverse ruling on appellant's motion to dismiss the proceedings on the ground the petition to show cause was not verified, for we have previously held that this is not necessary. In re Fletcher, 71 App.D.C. 108, 110, 107 F.2d 666, 668. Nor is there any merit to appellant's position that he was entitled to a jury trial, Eilenbecker v. District Court of Plymouth County, 134 U.S. 31, 36, 10 S.Ct. 424, 33 L.Ed. 801; 28 U.S.C.A. § 385; or to his sworn answer denying that at the time he filed the affidavit he intended it "to be contemptuous of the court or to reflect upon the court, or to impede or obstruct the due administration of justice." For, as the Supreme Court said in Clark v. United States, 289 U.S. 1, 19, 53 S.Ct. 465, 471, 77 L.Ed. 993:

"The oath of a contemnor is no longer a bar to a prosecution for contempt."

This brings us then to the main question, (1), whether the evidence shows beyond a reasonable doubt that appellant's conduct in the progress of the trial in the untimely filing of motions to subpoena witnesses was with the purpose to delay and embarrass the conduct of the trial. Judge Bailey, who patiently heard the evidence, held in the affirmative as to this— and we think correctly. In this respect the record shows that on April 14th, three days before the trial of the sedition case began, appellant applied for leave to subpoena at Government expense General Short and Admiral Kimmel. His act in so doing is not included in the pending contempt charges. On the same day, when the matter of subpoenaing these and other suggested witnesses for the defense was presented, the trial judge announced that he would not consider applications of this character until about two weeks before the close of the Government's case. At that time it was announced the trial would take at least two months and appellant himself estimated it would take at least four, and possibly six, months. On April 17th, the date the trial began, the Judge repeated his ruling in the presence of appellant. It cannot be doubted that appellant then knew that motions to subpoena defense witnesses at Government expense would not be taken up for disposition until after the jury had been impaneled. In spite of this, every few days he filed motions to subpoena as alleged defense witnesses men conspicuous in public and private life, and he accompanied these motions with written statements of what he expected to prove by these persons. We have considered the statements and find in them nothing which appears to us in any respect relevant to the subject matter of the case on trial and hence we think, as Judge Bailey thought, that their only purpose was to disrupt and interfere with the orderly conduct of the trial and their wholesale publication in newspapers a further effort to this end. And this view, we think, is amply confirmed in the incident following. On April 24th, during the time these several motions were being filed, the record shows there were between eighty-four and ninety-eight prospective jurors in the court, who were asked whether they had heard or read any matter with regard to the case of any of the defendants; all of the jurors except four said yes; forty-five of them had fixed opinions and of these appellant challenged twenty-two. When four of the prospective jurors indicated they had not read about the case, appellant made the remark—"I must be slipping"— an utterance, doubtless, intended to be casual, but eloquent, nevertheless, of the real purpose inducing these frequent breaches of the court's rulings.

(2) But in the light in which we see this case, the activities of appellant in the respects last mentioned, while properly the subject of censure, are of minor importance when weighed with his more

serious offence in certifying to the good faith of an affidavit made by his client Noble, charging impeachable offences against the Judge. The fantastic story of the President of the United States and the Judge in a conspiracy to bring about the conviction of innocent men, filed and certified to by counsel as made in good faith, on the strength of casual statements by unidentified jail prisoners whose names the affiant had forgot when he told the story to appellant, is so scandalous as, obviously, to require the application of disciplinary proceedings.

But we need spend little time in discussing in detail the unbelievable absurdities of the sordid story. All that concerns us here is whether appellant, having reasonable ground to believe it true, and so believing, sought the disqualification of Judge Eicher in good faith. We think a negative answer to this query is compelled in a fair consideration of appellant's own evidence given in the hearing before Judge Bailey. There he stated that the evidence of the alleged bargain between the Judge and the President came to him primarily from his client Noble; that he deferred filing an affidavit based on this information until he had talked to two or three other defendants in the Sedition Case. But when asked what investigation he had made to determine the truth of the charges, his answer was only that his client Noble had on a number of occasions told him that the story had come to him at the Lewisburg penitentiary in Pennsylvania, and that it had reached there through persons who "would come in and out of there, being transferred possibly from Lewisburg to some other institution and would remain at the jail for a short time." He stated further that his [Noble's] belief in the truth of the story was confirmed as a result of a conversation with an inmate of the District of Columbia jail. On such a foundation, it seems to us to go without saying that no normal person, least of all a member of the Bar, can reasonably assert that such a tale from such a source ought to be accepted and made the basis of an affidavit certified to by counsel as filed in good faith. Appellant's attempted justification in deferring the filing of the af-

fidavit until after the expiration of the time in which it could be legally filed, was that he wished to check up on its truth. But this—except to the extent narrated above—he admits he never did. Hence we are forced to conclude that, unhappily for him, his zeal—or more probably his deep-rooted animosity to the Judge —outran his discretion. But, whatever his motive, his acts were contemptuous and calculated to bring the court and the administration of justice into disrepute, and his conviction of contempt was, therefore, in all respects proper.

Affirmed.

### On Petition for Rehearing.

PER CURIAM.

■ Appellant complains that in our opinion we left undecided the applicability— on his appeal—of the decision in Nye v. United States, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172. His contention is that in his case, as in the Nye case, the acts of which he was adjudged guilty were committed out of the presence of the court and not so near thereto as to obstruct the administration of justice.

A short answer to this is that the contempts as found by Judge Bailey and as affirmed by us, i. e., the continued untimely filing—for improper purposes—of motions for subpoenas and the filing of the affidavit of bias,[1] which Judge Bailey and we found obstructed the orderly administration of justice, took place in the courtroom, or maybe, in some instances, in the Clerk's Office, and whether in the one or in the other, in every instance, in the actual progress of the trial in which appellant was actively of counsel. Ex parte Savin, Petitioner, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150. If this fact is not implicit in our opinion, the opinion should be considered as amended accordingly.

The fact that, in carrying forward appellant's plan to disrupt the trial, some of his acts were committed out of the immediate presence of the judge did not deprive the court of the right to deal summarily with the wrongful conduct. And there is nothing in the Nye case to the contrary.

Petition denied.

---

[1] Appellant's testimony before Judge Bailey as to the filing of the motion to disqualify Judge Eicher for bias is that it "was placed on the Clerk's desk in Chief Justice Eicher's Court," at 4:10 or 4:15 April 26th. The docket record shows that the motion was denied by Judge Eicher the same day.