George D. DUFFIELD, Appellant,

v.

CHARLESTON AREA MEDICAL CENTER, INC., a West Virginia Corporation, and J. Darrell Richmond, Administrator of Memorial Division of Charleston Area Medical Center, Inc., Appellees.

No. 73–2161.

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1974.

Decided Sept. 26, 1974.

John L. Boettner, Jr., Charleston, W. Va., for appellant.

George G. Guthrie, Charleston, W. Va. (Howard R. Klostermeyer and Spilman, Thomas, Battle & Klostermeyer, Charleston, W. Va., on brief) for appellees.

Before BUTZNER, RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The appellant, a surgeon, challenges on constitutional grounds the withdrawal of his medical staff privileges by the Board of Trustees of the defendant Hospital.[1] The District Court dismissed the action. We affirm.

The controversy between the parties began when one of the predecessor units of the present merged Hospital gave notice of the *ex parte* withdrawal, subject to appeal, of appellant's hospital privileges and when, upon appeal from such notice being taken by the appellant, the appellant was not furnished a statement of the charges on which the withdrawal was based sufficiently in advance of the hearing to be meaningful, and was denied at the hearing itself the right to confront and cross-examine the witnesses supporting the withdrawal and to submit testimony on his own behalf. It was the contention of the appellant that he was thereby denied hospital privileges without being accorded necessary procedural due process. That contention was accepted in an earlier order of the District Court, resulting in a temporary injunction against the termination of the appellant's hospital privileges until such time as the appellant was given an administrative hearing according him procedural due process. This restraining order was in effect on June 29, 1972 at the time the Governing Board of the defendant consolidated Hospital, after reconsideration of the action earlier taken by the board of its predecessor unit, and acting on the recommendation of its own Department of Surgery, revoked the appellant's hospital privileges, subject to a right of appeal to a Joint Conference Committee as hereafter described.

When the appellant was notified by the administrator of the Hospital of the withdrawal of his privileges and of the charges on which the withdrawal was based along with his right of appeal, he asserted that his rights were, in the existing posture of the case, determinable only by the District Court and not in an administrative hearing before the Joint Conference Committee. The Hospital construed this as a waiver of the right to an administrative hearing under its by-laws and moved both to vacate the restraining order and to dismiss the action. After a hearing, the District Court vacated in part the restraining order but ordered the Hospital to grant the appellant a prompt administrative hearing and to " 'make available to plaintiff's counsel copies of all documents and evidence upon which charges are based with regard to the administrative hearing, and that both parties make available to counsel for the other party a list of all the names and addresses of witnesses who will be called to testify at said administrative hearing within ten days prior to the administrative hearing.' "[2]

An administrative hearing was thereafter set. Under the by-laws of the Hospital, such hearing was conducted by the Joint Conference Committee. This Committee consists of ten members, five of whom are "selected from the Executive Committee" of the medical staff and the remainder are the members of "the Executive Committee" of the Board.[3] The hearing before this Com-

1. This action was begun initially against the Memorial Hospital Association of Charleston. On January 1, 1972, while the action was pending, the Memorial Hospital Association of Charleston merged with two other hospitals to form the Charleston Area Medical Center, Inc., which was then substituted as the party defendant and is one of the appellees in this Court.

2. Incidentally, the Hospital asserts that it complied fully with this order and supplied the appellant's counsel with the information directed to be furnished him but that the appellant did not provide it with a list of the witnesses to be called to testify by him.

3. Two of the medical members, who had voted on the recommendation of the Surgery Department voluntarily recused themselves in this case and did not take part in the decision of the Joint Conference Committee. Accordingly, the Joint Committee which heard the appellant's appeal consisted of

mittee began on October 2 and continued, with interruptions, until November 13, 1972. On December 6 the appellant filed his motion to disqualify certain members of the Joint Conference Committee. The motion was overruled and the Joint Committee thereafter recommended unanimously in favor of the withdrawal of appellant's hospital privileges, which recommendation was approved by the Governing Board of the Hospital on January 16, 1973. Following this approval by the Governing Board of the recommendation for withdrawal, the Hospital filed its motion to dismiss. Some weeks later the appellant moved to amend his complaint to allege the disqualification of the Joint Committee. These motions in due course came on for hearing in the District Court and resulted in a decree sustaining the Hospital's motion to dismiss and denying the appellant's motion to amend. This is the order for review on appeal.

■ ■ Jurisdiction of this action is manifest. When a hospital has received, as the defendant Hospital has, Hill-Burton financial assistance, the federal and state involvement is such as to subject the hospital to the obligations imposed by the Fourteenth Amendment, Sams v. Ohio Valley General Hospital Association (4th Cir. 1969) 413 F.2d 826, 828, and will sustain federal jurisdiction of a claim of denial of procedural due process, as guaranteed by such Amendment, in the withdrawal or revocation of a doctor's hospital privileges. Section 1343(3), 28 U.S.C., and Section 1983, 42 U.S.C.; Christhilf v. Annapolis Emergency Hospital Ass'n, Inc. (4th Cir. 1974) 496 F.2d 174, 178. In the case of a withdrawal or denial of hospital privileges, procedural due process entitles a physician to a full, evidentiary adminis-

trative hearing, before such privileges may be permanently or finally terminated. *Christhilf, supra.*[4] The appellant bases his right of action on a claim of such denial of procedural due process.

It is the position of the appellant that the members of the Governing Board, who sat on the Joint Conference Committee, had, by their action of June 29, 1972, in accepting and adopting the recommendation of the Department of Surgery that the hospital privileges of the appellant be withdrawn, subject to the latter's right of appeal thereon to the Joint Conference Committee, made a prejudgment of appellant's case and were thereby disqualified to sit or vote as members of the Joint Conference Committee, as convened on October 2, under order of the District Court for the purpose of according the appellant an administrative hearing. It is this claim of disqualification which is the single complaint of the appellant to be resolved on this appeal.

■ ■ The appellant is faced at the outset with the argument that his claim of disqualification is not timely. A claim of disqualifying bias or partiality on the part of a member of the judiciary or an administrative agency must be asserted promptly after knowledge of the alleged disqualification. Wyant v. Brennan (4th Cir. 1936) 85 F.2d 920, 921; Chafin v. United States (4th Cir. 1925) 5 F.2d 592, 595, cert. denied 269 U.S. 552, 46 S.Ct. 18, 70 L.Ed. 407; Coltrane v. Templeton (4th Cir. 1901) 106 F. 370, 376–377; International Paper Co. v. Federal Power Com'n (2nd Cir. 1971) 438 F.2d 1349, 1357, cert. denied 404 U.S. 827, 92 S.Ct. 61, 30 L.Ed.2d 56; Lucas v. United States (9th Cir. 1963) 325 F.2d 867, 869; Adams v. United States (5th Cir. 1962) 302 F.2d 307, 309; Gilli-

---

eight members, five from the Governing Board and three from the Executive Committee of the medical staff.

4. *Cf.*, Citta v. Delaware Valley Hospital (D. C.Pa.1970) 313 F.Supp. 301, 309:
   " * * * We thus consider it a sensible postulate, that before a surgeon's

privileges are permanently restricted on the basis of what he did in any given instance, he must be given an opportunity to defend and explain his actions.

   "Such a premise, however, does not compel the conclusion that a hearing must be given *before* the restrictions are imposed." (Italics in opinion.)

gan, Will & Co. v. Securities and Exchange Com'n. (2d Cir. 1959) 267 F.2d 461, 468, cert. denied 361 U.S. 896, 80 S.Ct. 200, 4 L.Ed.2d 152; Kramer v. United States (9th Cir. 1948) 166 F.2d 515, 518; Laughlin v. United States (1945) 80 U.S.App.D.C. 101, 151 F.2d 281, 284, cert. denied 326 U.S. 777, 66 S.Ct. 265, 90 L.Ed. 470.[5] In *Coltrane* this Court, quoting from the leading case of Moses v. Julian, 45 N.H. 52, said that, "[A]fter a trial has commenced, no attempt to recuse a judge will be listened to unless it is shown affirmatively that the party was not aware of the objection, and was in no fault in not knowing it" (106 F. at 377). The same principle was reiterated in *Chafin*, where the Court emphasized that "the just and reasonable rule would be that a challenge to a judge for bias and prejudice must be made at the first opportunity after discovery of the facts tending to prove disqualification * * *. To hold otherwise would be to allow a litigant to pervert and abuse the right extended to him at the cost to the other party of unnecessary expense and labor and to the public of the unnecessary disruption of the conduct of the courts." (5 F.2d at 595)

■ The factual basis for the appellant's claim of disqualification in this case is not complex or involved; it involves one simple fact, *i. e.*, the official participation of certain members of the Joint Conference Committee in the prior *ex parte* action of the Governing Board on June 29. It seems inconceivable that the appellant, a member of the medical staff of the Hospital and engaged in litigation with its trustees for a year and a half, did not know the identity of such trustees. And ten days before the administrative hearing began, he was furnished with all the pertinent records of the Hospital relevant to his case. These records would show the individual members of the Governing Board who partic-

ipated in the action on June 29. In any event, he was fully aware at the commencement of the administrative hearing that five of the members of the Joint Committee were trustees and he had ample opportunity at that time to make any inquiries he wished about their involvement in the action of June 29. He actually did ask and receive permission, before the hearing began, to examine all members of the Committee on *voir dire*. The purpose of that examination, as expressed by appellant's counsel, was to determine whether the members of the Committee either "as individuals or as a group", could resolve "the facts of this case on a fair and impartial basis; to try to determine whether you have any prejudice or whether you have formed any conclusions in regard to the outcome of the case." There was no restraint placed on the appellant in his interrogation of the members of the Committee. During the interrogation, the appellant made no inquiry of the trustee members of the Committee with reference to their participation in the action of the Governing Board on June 29, presumably because he already knew the answer. He contented himself with inquiring of all members of the Committee whether they had any prejudice or had formed "any conclusions about, let's call it, the innocence or guilt of Dr. Duffield." When all the members, on oath, answered in the negative his question, the counsel for the appellant professed himself satisfied, stating that he had "no reason to suspect that any one of you would do anything other than fair and impartial." With this statement, the hearing began, without any objection from the appellant.

Thereafter when the Hospital concluded its presentation of its case and the appellant began his presentation, it cannot be argued by the appellant that the ground of alleged disqualification of any members of the Committee was not

5. The rule as to disqualification of a judge for bias or partiality is generally the same for administrative agencies. National Labor

Relations Board v. Donnelly Co. (1947) 330 U.S. 219, 236–237, 67 S.Ct. 756, 91 L.Ed. 854.

clearly spelt out in the record. The appellant again raised no claim of bias or partiality at this point but proceeded with the presentation of his defense.[6] It was not until December 6, almost three weeks after the taking of testimony in the proceedings had ended, that the appellant first raised his charge of disqualification. The claim came too late.

■■ Apart from the tardiness of the appellant's claim of disqualification, however, the record establishes clearly the want of substantive merit in such claim. There is no controversy over the proposition pressed by the appellant, and, often affirmed in the authorities, that due process demands a fair hearing before an impartial tribunal. Johnson v. Mississippi (1971) 403 U.S. 212, 216, 91 S.Ct. 1778, 29 L.Ed.2d 423. But the appellant construes this principle to proscribe completely any exposure on the part of the tribunal or its members to the factual issues of the proceeding prior to final decision. In pressing this construction, the appellant would disregard the fact, made consistently in the decisions, that the bias and familiarity with a case, which will disqualify, "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." United States v. Grinnell Corp. (1966) 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778; Craven v. United States (1st Cir. 1927) 22 F.2d 605, 607–608, cert. denied 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739; United States v. Beneke (D.C.Minn.1970) 317 F.Supp. 1326, 1327, aff. 449 F.2d 1259.[7] If this were not true, any judge who ruled on a motion for a temporary restraining or-

der in a civil action or on a motion for bail in a criminal case (rulings which to some extent require some knowledge of the facts and some opinion on the issues) would be disqualified from later hearing the case. See, United States v. Tropiano (2nd Cir. 1969) 418 F.2d 1069, 1077, cert. denied 397 U.S. 1021, 90 S.Ct. 1258, 25 L.Ed.2d 530. Or, to take another example: A trial court which, on appeal, has been reversed would be ineligible to try the same case again. See, Davis, Administrative Law Treatise, § 12.01, p. 144, vol. 2 (1958); Boyd v. County of Fresno (1960) 178 Cal.App.2d 443, 2 Cal.Rptr. 779, cert. denied 364 U. S. 893, 81 S.Ct. 224, 5 L.Ed.2d 188. That the rule is not in practice so applied was made clear in Federal Trade Com'n. v. Cenent Institute (1948) 333 U.S. 683, 703, 68 S.Ct. 793, 804, 92 L.Ed. 1010, reh. denied 334 U.S. 839, 68 S.Ct. 1492, 92 L.Ed. 1764, where the Court said:

"* * * In fact, judges frequently try the same case more than once and decide identical issues each time, although these issues involve questions both of law and fact."

While the bulk of the cases stating this principle dealt with the disqualification of judges, the same rule applies to administrative bodies such as the Joint Committee in this case. National Labor Relations Board v. Donnelly Co., *supra* (330 U.S. at 236–237, 67 S.Ct. at 765) made this clear. There the Court put it:

"* * * Certainly it is not the rule of judicial administration that, statutory requirements apart, * * * a judge is disqualified from sitting in a retrial because he was re-

6. *Cf.*, Refior v. Lansing Drop Forge Co. (6th Cir. 1942) 124 F.2d 440, 445, cert. den. 316 U.S. 671, 62 S.Ct. 1047, 86 L.Ed. 1746, where the Court said a litigant may not "after he has knowledge of the alleged bias or prejudice of the trial judge * * * go forward" without asserting disqualification. *See, also*, Securities and Exchange Commission v. Bartlett (8th Cir. 1970) 422 F.2d 475, 480.

7. Indeed, the rule of disqualification has been extended in some instances to situations in which such factual familiarity finds its source in other judicial proceedings. Berger v. United States (1921) 255 U.S. 22, 31, 41 S.Ct. 230, 65 L.Ed. 481; MacKay v. Mc-Alexander (9th Cir. 1959) 268 F.2d 35, 39, cert. denied 362 U.S. 961, 80 S.Ct. 875, 4 L. Ed.2d 876.

versed on earlier rulings. We find no warrant for imposing upon administrative agencies a stiffer rule, whereby examiners would be disentitled to sit because they ruled strongly against a party in the first hearing."

That this is true is evidenced by the many cases in which the Courts, reversing a decision of an administrative body, has remanded the proceedings to that body for another hearing, involving generally the same issues.[8] And this conclusion has been reached specifically in cases involving, as here, the withdrawal of a physician's hospital privileges. In Woodbury v. McKinnon (5th Cir. 1971) 447 F.2d 839, 844–845, it was held "that a hospital medical staff which stripped a physician of his surgical privileges was not disqualified to consider his qualifications merely because it had considered them on a previous occasion."[9] In that case, the Medical Staff on the Hospital "voted to withhold the privileges of Dr. Woodbury" subject to a subsequent hearing before it. Dr. Woodbury, claiming disqualification by reason of prior participation of the Medical Staff, demanded an administrative hearing before "an ad hoc committee of disinterested doctors, not affiliated with Barbour County Hospital." (at 845, n. 1) In denying the motion and in affirming the qualification of the Medical Staff to conduct the administrative hearing, the Court said:

" * * * The consideration on a previous occasion of the plaintiff's qualifications would not demonstrate such bias as to constitute a denial of due process" (at 845).

Actually, American Cyanamid Company v. F.T.C. (6th Cir. 1966) 363 F.2d 757, on which the appellant relies for his contention, illustrates the distinction drawn in the decisions between opinions stemming from "an extrajudicial source" and those that are "learned from * * * participation in the case." The familiarity of the Commissioner in that case with the facts surrounding the Trade Commission complaint and his opinions as expressed thereon, which were found to disqualify him, resulted from his activities as counsel for a Congressional Committee and occurred before any complaint was filed by the Commission in the proceedings and before the Commissioner even became a member of the Commission. Such familiarity and opinion unquestionably had "an extrajudicial source", unconnected with the Commissioner's "participation in the case", and was disqualifying. Moreover, it was plain on the record that the Commissioner, whose impartiality was attacked, had expressed a firm opinion on the issues during those "extrajudicial" proceedings.

■ The action taken in this case by the Governing Board on June 29 in receiving and approving conditionally the recommendation of the Department of Surgery against the renewal of the appellant's hospital privileges, on the other hand—the action on which the appellant predicates his claim on bias—had no "extrajudicial source" but represented simply a step, largely a procedural one at that, in the administrative resolution of the proceedings involving the appellant. It was action taken on an *ex parte* recommendation.[10] No evidence was

---

8. *See*, N. L. R. B. v. Gissel Packing Co. (1969) 395 U.S. 575, 89 S.Ct. 1918, 23 L. Ed.2d 547, reh. denied 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123; United States ex rel. Checkman v. Laird (2d Cir. 1972) 469 F.2d 773; United States ex rel. Donham v. Resor (2d Cir. 1971) 436 F.2d 751.

9. This summarization of the ruling in *Woodbury* is taken from the decision in Duke v. North Texas State University (5th Cir. 1973) 469 F.2d 829, 843, n. 3, cert. den. 412 U.S. 932, 93 S.Ct. 2760, 37 L.Ed.2d 160.

10. *Cf.*, Federal Trade Com'n. v. Cement Institute, *supra*, where the Court said that "the fact that the Commission had entertained such views as the result of its prior *ex parte* investigations did not necessarily mean that the minds of its members were irrevocably closed" (333 U.S. at 701, 68 S. Ct. at 803) so as to disqualify it from later disposing finally of the issues in the proceedings.

taken by the Board at that stage. The decision taken was purely tentative and conditional; it became *final only if the appellant voluntarily chose to accept the recommendation and not to contest it.* It may be accurately described as an administrative step in bringing the issue to a head, much as the issuance of a show cause order in connection with an application for preliminary injunctive relief in judicial proceedings sets the stage for a valid hearing on the issues presented by such application. In the record, the appellant argued that, under the by-laws of the Hospital, the Governing Board should have taken no action, tentative and conditional though it may have been, until after the Joint Conference Committee had held its hearing. It is correct that the Governing Board could not act finally on the appellant's application until the appellant had been given an opportunity to have an administrative hearing. But some procedure had to be adopted to give notice to the appellant of that right. That, it seems, was the purpose to be served by the action taken by the Board on June 29 and the resulting notice given the appellant. Perhaps some other formality may have been adopted, such as having the Department of Surgery transmit directly to the Joint Committee its recommendation, with the Committee notifying the appellant of his rights but we find no violation of appellant's rights and no bias on the part of the Governing Board in the procedure actually adopted. The appellant was given an evidentairy hearing, a hearing which, in the words of the chairman of the Joint Committee, "treated as a de novo matter" the issues and where the members of the Committee, including the Board Members on the Committee, were "hearing this evidence for the first time as an original proposition." He attended with counsel all the hearings. He was accorded the opportunity to confront and cross-examine all witnesses testifying against the renewal of his privileges. He testified in his own behalf and was given the right to call witnesses on his own behalf. Actually, the hearing was kept open for a period of ten days to enable him to call any additional witnesses on his behalf. The hearing was fair and the rights of the appellant were not prejudiced by any valid evidence of partiality on the part of the members of the Committee. The District Court accordingly properly granted the Hospital's motion.

We find it unnecessary to consider the additional ground assigned by the District Court for dismissing the action. This additional ground falls under the heading of the "rule of necessity". It is predicated in this case on the fact that the claim of the appellant, if sustained, would have disqualified all members of the Governing Board from acting and would have made it impossible for the Hospital to have validly terminated the appellant's staff privileges, whatever the factual justification for that termination. Such a frustration of the power to act, it is held under this rule, in intolerable. " * * * [D]isqualification will not be permitted to destroy the only tribunal with power in the premises." Board of Medical Examiners v. Steward (1954) 203 Md. 574, 102 A.2d 248, 252. *See, also,* 2 Davis, Administrative Law Treatise, § 12.04, p. 162. As stated, however, we do not plant our decision on that ground.

We may add, too, that since, even under the only facts asserted by the appellant he did not set forth a valid basis for disqualification,[11] the District Court did not err in denying appellant's motion to amend.

Affirmed.

11. *Cf.,* Securities and Exchange Com'n. v. R. A. Holman & Co. (1963) 116 U.S.App.D.C. 279, 323 F.2d 284, 286, cert. denied 370 U.S. 911, 82 S.Ct. 1257, 8 L.Ed.2d 404.