Chester SAWYER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9005–CR–00282.

Court of Appeals of Indiana, Second District.

Dec. 31, 1991.

Robert W. Hammerle and Monica Foster, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen. of Indiana and Gary Damon Secrest, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

---

SHIELDS, Judge.

Chester Sawyer appeals his conviction for conspiracy to commit bribery, a class C felony.[1]

We affirm.

### ISSUES

\*   \*   \*   \*   \*   \*

4. Whether the evidence is sufficient to support Sawyer's conviction.

\*   \*   \*   \*   \*   \*

6. Whether Sawyer's conviction is contrary to law because Sawyer was acquitted of bribery.

\*   \*   \*   \*   \*   \*

### FACTS

Sawyer owned the Blue Flame, a tavern featuring topless dancing, located on Brookville Road in Indianapolis. The City of Indianapolis (City) filed a zoning enforcement action in the Municipal Court of Marion County against Sawyer and the Blue Flame in February of 1986 claiming the Blue Flame was operating in violation of the zoning ordinance. Before a hearing could be held, Sawyer filed a petition with the Board of Zoning Appeals (B.Z.A.) seeking a variance for the Blue Flame. The enforcement action was continued pending the outcome of the variance application. After the B.Z.A. denied the variance, Sawyer sought judicial review in the Marion County Superior Court. Sawyer's effort was unsuccessful; the judicial review court upheld the B.Z.A. decision on July 20, 1987 and this court affirmed the judgment by a memorandum decision filed December 6, 1988.

Special Agent Charles Harvey of the Federal Bureau of Investigation (F.B.I.) received a tip Chester Sawyer was paying bribes to Walter Abell in exchange for Abell "fixing" zoning cases. Abell served with the Indianapolis Department of Transportation as staff coordinator. His duties consisted mainly of coordinating and handling labor issues for the mayor of Indianapolis.

Michael Walters, a retired police officer and an employee of the Marion County Prosecutor's Office, calling himself Michael Mears, posed as a front man for someone interested in buying the Blue Flame and began making inquiries in the spring of 1988. Walters, Sawyer, Roy Swineford, who had introduced Walters to Sawyer, and F.B.I. Special Agent George Murray, who used the name George Michael and posed as the "money man" interested in buying the tavern, met on June 6, 1988 at the Blue Flame. Murray told Sawyer he would buy the Blue Flame only if he had a guarantee there would be no zoning problems. After discussing several options, Sawyer suggested Abell could solve the zoning problems. Sawyer stated Abell had an office next to the mayor, that Abell had helped him out of previous problems, and that Abell could be very valuable in obtaining the zoning variance which had been requested and denied.

On June 17, 1988 Walters, Sawyer, Swineford, and Murray met with Sawyer's attorney at the Blue Flame. The men discussed the zoning problems and Abell's name was again mentioned.

Later that afternoon, Walters and Murray returned to the Blue Flame where they met with Sawyer and Abell. Sawyer stated Abell would "keep the mayor off [their] back." Record at 514. Sawyer claimed to have paid Abell approximately $3,000 over the previous three years for similar favors. Sawyer walked Abell out to Abell's car and then returned to the tavern. After Sawyer returned he told Walters and Murray that Abell would "fix" the zoning matter for $10,000: $1,000 up front and $9,000 after the variance was obtained. Sawyer also stated he still felt using his attorney was the best way to fight the zoning problems, but the decision was Murray's. Murray then offered Sawyer $1,000 which Sawyer refused; he stated he would simply act as a go-between for Abell and Murray.

Sawyer, Abell, Walters, and Murray next met in a hotel room on July 14, 1988. Abell stated he had been the primary motivator for any gains achieved on the zoning prob-

1. IC 35–41–5–2 (1988); IC 35–44–1–1 (1988).

lems, he had an office next to the mayor's office, he had the ability to "fix" traffic tickets and drunk driving cases, and he could obtain the release of correctional inmates. Murray stated he believed Abell was the best solution to the zoning problems and Sawyer assured Murray that Abell would "arrange to fix it." Record at 718. Murray attempted to hand $1,000 to Abell, but Abell responded, "give it to [Sawyer]." Record at 202 and 725. Sawyer took the money and stated, "I'm a neutral party to this." Record at 279–80. Sawyer later gave the money to Abell.

Abell died on October 8, 1988. Sawyer was charged with conspiracy to commit bribery and bribery, class C felonies. After a jury trial, Sawyer was convicted of the conspiracy charge and received a five-year executed sentence. He appeals.

### DISCUSSION

\*      \*      \*      \*      \*      \*

### IV.

Sawyer claims the evidence is insufficient to support his conviction. In determining the sufficiency of the evidence, we do not reweigh the evidence or resolve questions of credibility. We look only to the evidence and inferences therefrom which support the judgment. Sawyer's conviction will be affirmed if there is evidence of probative value from which a reasonable trier of fact could find the existence of each element of the offense beyond a reasonable doubt. *Everroad v. State* (1991), Ind., 571 N.E.2d 1240, 1244.

### A.

Sawyer claims the evidence is insufficient to prove Abell was a public servant. He argues the evidence shows Abell was an independent contractor with the city, not an employee, and that Abell was not authorized to perform any "official functions." Therefore, according to Sawyer, his conduct did not constitute conspiracy to commit bribery.

To prove Abell was a public servant authorized to perform "official functions," the State introduced three contracts between Abell and the City. The contracts cover the periods of January 1 through June 30, 1987, July 1 through December 31, 1987, and July 1 through December 31, 1988, describe Abell's position as "Staff Coordinator," and define his duties and compensation. The July 1 through December 31, 1988 contract specifically describes Abell as an independent contractor and states he "is not in any way to be construed as an employee of the city." Record at 339.

Sawyer argues Abell could not be a public servant because Abell was an independent contractor. He also argues there is no evidence that any of Abell's duties are "official functions."

"Public servant" means a person who: (1) is authorized to perform an official function on behalf of, and is paid by, a governmental entity.

(2) is elected or appointed to office to discharge a public duty for a governmental entity; or

(3) with or without compensation, is appointed in writing by a public official to act in an advisory capacity to a governmental entity concerning a contract or purchase to be made by the entity.

IC 35–41–1–24 (1988).

■ Sawyer and the State agree only section (1) could apply to Abell. The status of an employee is not required by this statutory definition; Abell need only have been authorized to perform an official function on behalf of, and be paid by, a governmental entity. Abell was paid by the City for his services. Therefore, he was a "public servant" if he was authorized to perform an official function on behalf of the City.

The contract states Abell's duties include that he "[s]erve as Executive Secretary of the mayor's Labor Advisory Council," that he perform "[o]ther projects as assigned by the Mayor or the Director of the Department of Transportation," and that he "[c]oordinate his activities with the Mayor's Office on a regular basis." Record at 338. Although the term "official function" is not defined by the Indiana Code, it cannot be seriously disputed that Abell's contractual

duties included official functions on behalf of the City in the sense that he was charged with performing duties appropriate to a public employee. The evidence is sufficient to establish Abell was a "public servant" because he was authorized to perform an official function on behalf of the City and was paid by the City.

## B.

Sawyer claims zoning matters were not within or related to Abell's official duties and, therefore, he could not have conspired to pay Abell with the intent to control Abell's performance of an act related to his employment or function as a public servant.

■ Sawyer was convicted of conspiring to commit bribery. A person commits bribery if the person:

confers, offers, or agrees to confer on a public servant ... any property except property the public servant is authorized by law to accept, with intent to control the performance of an act related to the employment or function of the public servant.

IC 35-44-1-1(a)(1) (1988). This statute, then, requires that the act intended to be controlled relate to the employment or function of the public servant.

■ We agree with Sawyer that Abell's duties as a public servant did not involve or relate to zoning matters. However, Sawyer was convicted of conspiracy, not bribery. Although it may have been impossible for Sawyer to have committed bribery, impossibility generally is not a defense to a charge of conspiracy. *See United States v. Petit* (1988), 11th Cir., 841 F.2d 1546, 1550–51, *cert. denied sub nom.* (1988), 487 U.S. 1237, 108 S.Ct. 2906, 101 L.Ed.2d 938 (conviction for conspiring to receive stolen property upheld even though property defendant conspired to receive was not actually stolen); *United States v. Bobo* (1978), 5th Cir., 586 F.2d 355, 371, *cert. denied sub nom.* (1979), 440 U.S. 976, 99 S.Ct. 1546, 59 L.Ed.2d 795 (government need not show substance purchased by defendant was in fact heroin in order to support defendant's conviction for conspiracy to possess and distribute heroin); *Craven v. United States* (1927), 1st Cir., 22 F.2d 605, 609, *cert. denied,* (1928), 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739 (defendant may be convicted of conspiracy to smuggle liquor in violation of the customs law even though, unknown to the conspirators, the liquor was of domestic origin).

The conspiracy statute states, in relevant part:

(a) A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony....

(b) The state must allege and prove that either the [defendant] or the person with whom [the defendant] agreed performed an overt act in furtherance of the agreement.

IC 35-41-5-2 (1988). Thus, the crime of conspiracy focuses on the intent with which the defendant agrees with another person. It is irrelevant that Sawyer's conduct could not constitute bribery; what is relevant is the intent and belief Sawyer had when he agreed with Murray and Walters to "confer, offer, or agree to confer" money upon Abell. Record at 2.

Sawyer *agreed* with Walters and Murray to pay Abell money in exchange for Abell's influence in resolving the zoning matter in favor of the Blue Flame. The $1,000 payment satisfies the overt act requirement. The evidence is sufficient to support Sawyer's conviction.

\* \* \* \* \* \*

## VI.

Sawyer next claims his conviction is contrary to law because he was acquitted on the bribery charge. He argues "[t]he acquittal on the substantive charge [of bribery] operates as an implicit acquittal of the overt act element of the conspiracy count because the overt act alleged is the substantive offense." Appellant's Brief at 25.

■ Generally, acquittal of the substantive offense does not preclude conviction of conspiracy to commit the felony. *Weekley v. State* (1981), Ind.App., 415 N.E.2d 152, 156. However, an exception to the general rule exists "where the necessary proof on the substantive charge is identical with that required for conviction on the conspiracy count." *Id.* at 157.

■ In addressing the issue raised here, the court in *Weekley* stated:

> Where the substantive offense is the overt act necessary to sustain the conviction on the conspiracy count, an acquittal of the substantive offense operates as an acquittal of the conspiracy count, if the acquittal of the substantive offense constitutes a determination that the overt act was not committed. *However, if the acquittal on the substantive count does not necessarily constitute a determination that the overt act was not committed, the acquittal does not preclude a conviction on the conspiracy count.*

*Id.* (emphasis added). The conspiracy count in the subject information charges the overt act as follows:

> [Sawyer] accepted on behalf of, and in the presence of, WALTER L. ABELL, one thousand dollars ($1,000.00) from GEORGE W. MURRAY, with the understanding that said money was intended as partial payment to WALTER L. ABELL for WALTER L. ABELL'S causing of a zoning matter, involving the city of Indianapolis and a tavern located at 5478 Brookville Road, to be resolved in favor of the tavern.

Record at 2. Sawyer's acquittal on the bribery charge does not necessarily constitute a determination that the charged overt act was not committed.[2] There are many reasons why the jury may have found Sawyer not guilty of the substantive offense of bribery, including impossibility. *See* Section IV of Discussion, *supra*. Sawyer's conviction on the conspiracy count is not contrary to law.

\* \* \* \* \* \*

Judgment affirmed.

SULLIVAN and BUCHANAN, JJ., concur.

---

**2.** The bribery count alleged Sawyer "did confer, offer, or agree to confer [money] on WALTER L. ABELL, who was a public servant ... with intent to control the performance of an act related to the employment or function of WALTER L. ABELL, that is, with intent that WALTER L. ABELL cause a zoning matter ... to be resolved in favor of [a] tavern." Record at 3.