Fred W. KLINGE, M. D., Appellant,

v.

LUTHERAN CHARITIES ASSOCIA-
TION OF ST. LOUIS, a corporation,
d/b/a Lutheran Medical Center, et al.,
Appellees.

No. 74–1994.

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1975.

Decided Aug. 4, 1975.

Rehearing and Rehearing En Banc
Denied Oct. 7, 1975.

58

James J. Raymond, Clayton, Mo., for appellant.

Norris H. Allen, St. Louis, Mo., for appellees.

Before LAY, WEBSTER and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This is an appeal from a summary judgment entered in favor of the defendants in subject case by the United States District Court for the Eastern District of Missouri.[1] The suit arose from the fact that after the conclusion of rather protracted administrative proceedings that were conducted both before and after the commencement of the action, the plaintiff, Dr. Fred W. Klinge of St. Louis, Missouri, was removed from his position on the surgical staff of Lu-

1. The Honorable H. Kenneth Wangelin, District Judge.

theran Medical Center in the city just mentioned.

The Lutheran Medical Center, hereinafter at times called "Lutheran," is a not-for-profit hospital privately owned by the Lutheran Charities Association of St. Louis, a Missouri corporation.

Prior to 1972 plaintiff had been a member of the staff at Lutheran for a number of years. In 1972 he began having professional problems in connection with his surgical practice, and the hospital administration named a Special Medical Records Review Committee to review and appraise the work of the plaintiff. That Committee conducted studies of cases that plaintiff had handled and recommended that he be allowed to continue to practice only under certain restrictions. The plaintiff did so practice throughout 1973, but he was finally advised that as of mid-January, 1974 his staff privileges would be revoked and that he would not be permitted to engage in any surgery whatever at Lutheran.

Plaintiff commenced this action on January 16, 1974, naming the Hospital and three individual doctors occupying important positions in the Hospital administration as defendants. The complaint is in two counts. In the first count plaintiff alleges in substance that as a result of a conspiracy on the part of the individual defendants and other Hospital personnel he was deprived of his staff position in violation of both procedural and substantive due process of law guaranteed by the fourteenth amendment to the Constitution of the United States. It is 'alleged in that connection that the Hospital has received financial assistance under the Hill-Burton Act, 42 U.S.C. § 291 et seq., and that the actions taken against plaintiff were done under color of state law. In the second count it is alleged that plaintiff's loss of staff position resulted from a violation of the Hospital's own written rules, regulations and by-laws. With respect to that count plaintiff invoked the pendent jurisdiction of the court since there is no diversity of

citizenship between him and the defendants. The complaint prays for appropriate injunctive relief and for an award of compensatory and punitive damages.

Plaintiff sought both a preliminary and final injunction, and a hearing was held on the application for temporary relief soon after the complaint was filed. The district court did not issue a temporary injunction but did order that plaintiff not be terminated at the Hospital until he had been afforded a hearing.

'A full hearing was held. The hearing commenced on January 28, 1974 and was concluded on February 11. There were six sessions conducted by the hearing panel consisting of doctors who were members of the staff at Lutheran.

In advance of the hearing plaintiff was served with fifteen specific written charges of professional deficiencies or misconduct. He requested that he be supplied with copies of some 95 hospital documents and they were supplied. The hearings were presided over by an experienced attorney who acted largely as a parliamentarian; the proceedings were reported in shorthand, and the transcript of the hearings consists of some 500 pages. A substantial body of documentary evidence was also introduced.

The hearing panel sustained ten of the charges against the plaintiff, two of them being that plaintiff had failed to exercise the degree of care and skill that a reasonably careful and skilled surgeon would have exercised in the circumstances, and that he failed to possess the degree of care and skill ordinarily possessed by reasonably skilled surgeons. The district court found that "the evidence was overwhelming that plaintiff simply should not practice as a surgeon."

The findings of the panel were turned over to the President of the Hospital's medical staff, and a copy of them was supplied to plaintiff. In due course plaintiff was advised that the Board of Directors had adopted a resolution expelling plaintiff from the staff, but that the Board would hold a hearing in the matter on April 17; plaintiff was invited to

appear at that hearing, but he did not do so. In the course of that hearing the medical records librarian testified that she was instructed on January 23 and 24 to make hospital records available to plaintiff for his review and for that of his attorney and a physician, and that she made available such records as were requested.

The Board adhered to its view that plaintiff should be dismissed from the staff, and the administrative proceedings having been completed, the defendants moved for summary judgment in the district court.

The district court found that plaintiff had been accorded procedural due process of law. Substantively, the district court found that the final administrative action taken against plaintiff was supported by substantial evidence and was proper. In coming to that conclusion the district court noted that it was not free to substitute its own judgment for that of the experts who had sat in judgment on plaintiff's qualifications to continue to practice surgery.

On the basis of its findings and conclusions the district court granted the motions of the defendants and entered a summary judgment dismissing the complaint and assessing costs against plaintiff including the expenses of the hearings that have been described. This appeal followed.

■ It is not disputed that Lutheran has participated substantially in the federal Hill-Burton program, which is administered through state agencies, and that Lutheran has substantial contract relations with the State of Missouri and the City of St. Louis. No claim is made that the action of the Hospital's Board of Directors in removing plaintiff from the staff was not state action which would give the court jurisdiction under 28 U.S.C. § 1343(3) read in connection with 42 U.S.C. § 1983.[2]

■ The defendants concede that plaintiff had a federally protected right not to be removed from Lutheran's staff without due process of law.

More specifically, the defendants do not deny that plaintiff had a constitutional right not to be expelled from the staff without valid cause related to his professional capabilities and conduct, and that he had a right not to be removed without the procedural due process appropriate to an intra-institutional inquiry as to whether a hospital staff member should be removed on account of incompetence or negligence. *Duffield v. Charleston Area Medical Center, Inc.,* 503 F.2d 512 (4th Cir. 1974), *affirming* 361 F.Supp. 398 (S.D.W.Va.1973); *Christhilf v. Annapolis Emergency Hospital Ass'n, Inc.,* 496 F.2d 174 (4th Cir. 1974); *Woodbury v. McKinnon,* 447 F.2d 839 (5th Cir. 1971); *Citta v. Delaware Valley Hospital,* 313 F.Supp. 301 (E.D.Pa.1970).

■ As to procedural due process, plaintiff was entitled to reasonable notice of the charges against him and a fair opportunity to be heard with respect to those charges before a panel of fair minded doctors. However, he was not entitled to a full blown judicial trial. *Duffield v. Charleston Area Medical Center, Inc; Christhilf v. Annapolis Emergency Hospital;* and *Woodbury v. McKinnon,* all *supra.*

■ While plaintiff was entitled to judicial review of the administrative action that was finally taken against him, he was not entitled to a trial de novo as to his competency to remain on the staff at Lutheran. The judicial inquiry available to him was limited to a consideration of whether his ultimate removal from the staff involved deprivations of procedural or substantive rights guaranteed by the fourteenth amendment. In this connection we call attention to the following pertinent language appearing in *Wood-*

**2.** Plaintiff also invokes as a jurisdictional basis 42 U.S.C. § 1985(3). That section is geared to the Equal Protection Clause of the fourteenth amendment, and we do not consider it to be applicable here. *Jackson v. Norton-Children's Hospitals, Inc.,* 487 F.2d 502, 503 (6th Cir. 1973).

bury v. McKinnon, supra, 447 F.2d at 842–43:

Once having become a member of the hospital surgical staff Dr. Woodbury had a right to reappointment until the governing authorities determined after a hearing conforming to the minimum requirements of procedural due process that he did not meet the reasonable standards of the hospital. The decision resulting from the hearing must be untainted by irrelevant considerations and supported by sufficient evidence to free it from arbitrariness, capriciousness or unreasonableness. This is the extent to which Dr. Woodbury is entitled to substantive due process under the United States Constitution. Foster v. Mobile County Hospital Board, 398 F.2d 227 (5th Cir. 1968).

A doctor has no constitutional right to practice medicine in a public hospital. Hayman v. Galveston, 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714 (1927). However, there is no dispute that the operation of this hospital is state action and that it is required to meet the provisions of the Fourteenth Amendment in the admission of physicians to its staff. Foster v. Mobile County Hospital Board, supra; Birnbaum v. Trussell, 371 F.2d 672 (2d Cir. 1966); Meredith v. Allen County War Memorial Hospital Comm., 397 F.2d 33 (6th Cir. 1968); see Annot. 37 A.L.R.3d 645 (1971).

The Constitution, however, does not prevent the hospital from establishing standards for admission geared to the purpose of providing adequate hospital care. This court has recently spoken to the broad discretion that must be given to the governing board of a hospital in setting the standards and in admitting physicians to its staff. Sosa v. Board of Managers of Val Verde Memorial Hospital, 437 F.2d 173 (5th Cir. 1971). Judge Goldberg there placed in proper focus the restraint that must be exercised in judicial consideration of challenges to hospital administration.

"No court should substitute its evaluation of such matters for that of the Hospital Board. It is the Board, not the court, which is charged with the responsibility of providing a competent staff of doctors. The Board has chosen to rely on the advice of its Medical Staff, and the court cannot surrogate for the Staff in executing this responsibility. Human lives are at stake, and the governing board must be given discretion in its selection so that it can have confidence in the competence and moral commitment of its staff. The evaluation of professional proficiency of doctors is best left to the specialized expertise of their peers, subject only to limited judicial surveillance. The court is charged with the narrow responsibility of assuring that the qualifications imposed by the Board are reasonably related to the operation of the hospital and fairly administered. In short, so long as staff selections are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered with irrelevant considerations, a court should not interfere. Courts must not attempt to take on the escutcheon of Caduceus." Id. at 177.

 The district court recognized that the case was before it on a motion for summary judgment and that the availability of summary relief under Fed.R.Civ.P. 56 is limited. But the district court also recognized, and quite properly, that "it must be kept in mind that the purpose of Rule 56 is to avoid the expenditure of judicial time and to avoid trials when the facts are not in dispute insofar as they are material to the lawsuit."

 In passing upon the motion the district court was required to view the

case in the light most favorable to the plaintiff and to give him the benefit of all reasonable inferences to be drawn from the materials before that court. And in connection with this appeal we are required to apply the same standards. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Melancon v. Insurance Co. of North America,* 482 F.2d 1057, 1059 (5th Cir. 1973); *Bryan v. Aetna Cas. & Surety Co.,* 381 F.2d 872, 875 (8th Cir. 1967); 10 Wright & Miller, Federal Practice & Procedure, § 2716 at 430.

■ Although a district court in passing upon a Rule 56 motion is not required to make any findings of fact or conclusions of law, such findings and conclusions which reveal the reasoning of the district court are "desirable and minimize duplication of judicial effort." *Melancon v. Insurance Co. of North America, supra,* 482 F.2d at 1059, n. 4. Findings and conclusions of the district court in summary judgment context have been referred to as "helpful." *United States fuab Industrial Instrument Corp. v. Paul Hardeman, Inc.,* 320 F.2d 115, 116 (5th Cir. 1963); 10 Wright & Miller, *op. cit.,* at 433–34. And we have found that the full and well reasoned opinion of Judge Wangelin in this case has been most instructive and helpful to us in determining whether summary judgment should have been granted.

Having considered the record in the case in the light of the principles and authorities that have been mentioned and cited, we are persuaded that the district court did not err in granting the motions of the defendants and dismissing the complaint.

■ We conclude that the case did not present any genuine issue as to any material fact, and that the defendants were entitled to judgment as a matter of law. Specifically, we are convinced that plaintiff received adequate notice of the charges against him, that he had a fair hearing appropriate to the proceedings involved, that the charges against plaintiff were considered fairly and objectively by a qualified and fair hearing panel, and that the evidence submitted to the panel clearly justified if it did not positively require the ultimate action that was taken by the Board of Directors of the Hospital on the basis of the findings of the hearing panel.

■ There was ample evidence to justify a medical panel made up of Dr. Klinge's peers and colleagues in coming to the conclusion that the Doctor had become incompetent to practice surgery, and that for the good of the Hospital, the safety of patients, the protection of hospital personnel necessarily engaged to greater or lesser extent in the operations being performed by plaintiff, and, indeed, for the good of the plaintiff himself, it was necessary that he be removed from the staff. And, as Judge Wangelin pointed out, it was not for him to substitute his judgment for that of the doctors who had considered the case, although there is nothing in the opinion to suggest that the district court would have come to a different conclusion had it been free to do so.

With regard to procedural due process, plaintiff argues in particular that he did not have an adequate opportunity to prepare his defense to the charges against him, that the members of the hearing panel were prejudiced against him and had pre-judged his case, and that it was a denial of due process for an attorney to preside over the hearings.

■ As to the complaint last mentioned, plaintiff's position is that the lawyer who presided in effect acted as an attorney for the Hospital. We deem this complaint to be insubstantial. It is clear that the presiding officer acted in the capacity of a parliamentarian for the purpose of seeing that the sessions of the

panel were conducted in an orderly manner, and there is nothing to indicate that plaintiff was prejudiced in any way by the attorney's participation in the proceedings in the manner and to the extent just mentioned.

■ Nor are we impressed by plaintiff's claim that he did not have an adequate opportunity to prepare his defense. The plaintiff's controversy with the Hospital had begun in 1972, if not before; he knew the nature of the complaints being made about him, and he knew that they involved his own operations. Presumably, he had some existing recollection of the particular cases that would be considered by the hearing panel. He was given ten days advance notice of the first session of the panel, and he was advised that if he needed additional time to obtain and examine documents and records as the hearings proceeded, additional time would be allowed him. While plaintiff attended the first session of the panel, he did not attend later sessions, and he did not avail himself of an additional opportunity to appear before the Board of Directors in April, 1974. As far as notice and opportunity to be heard are concerned, we do not think that the plaintiff was entitled to any more than he received or at least was offered.

■ As to the fairness and objectivity of the members of the panel, we start with the proposition that the plaintiff was entitled to have his case judged by fair minded doctors who were able and willing to consider and decide the case with "good faith objectivity." Cf. Environmental Defense Fund v. Corps of Engineers, U. S. Army, 470 F.2d 289, 296 (8th Cir. 1972). But plaintiff was not entitled to a panel made up of outsiders or of doctors who had never heard of the case and who knew nothing about the facts of it or what they supposed the facts to be.

■ In the recent case of Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), the Supreme Court held that it is not necessarily a violation of due process of law for the same agency to perform both an investigative and an adjudicative function, and that administrative fact finders are not necessarily disqualified from participating in an adversary proceeding simply because they have been exposed to evidence presented in non-adversary investigative procedures that were followed prior to the adversary hearing. It was said:

Without a showing to the contrary, state administrators "are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." United States v. Morgan, 313 U.S. 409, 421, 61 S.Ct. 999, 85 L.Ed. 1429 (1941).

421 U.S. 35 at 55, 95 S.Ct. 1456 at 1468.

■ There is nothing to suggest that any of the doctors who sat on the hearing panel or anyone else connected with the case had any personal animus or ill will toward the plaintiff. Obviously, plaintiff's problem with the Hospital had come to the attention of other members of his profession who practiced in the Hospital. It does not follow, however, that the members of the panel were disqualified from sitting or that they were unable to and did not give the case fair and impartial consideration in the context in which it was presented to them. A panel of doctors does not ordinarily vote to expel a colleague from a hospital staff for trivial causes or where lesser sanctions or restrictions would serve the purpose. And it will be remembered that the initial decision to remove plaintiff from the staff was not made until it turned out that to permit him to practice under restrictions was not feasible.

The argument that plaintiff makes about the hearing panel is not dissimilar to the arguments advanced in Duffield v. Charleston Area Medical Center, supra, and Woodbury v. McKinnon, supra. The arguments were rejected in those cases, and we reject plaintiff's argument

here. *Cf. Wilson v. Lincoln Redevelopment Corp.,* 488 F.2d 339 (8th Cir. 1973).

 While we agree with the district court in its action in granting summary judgment against the plaintiff and in taxing him with items of costs falling within the scope of 28 U.S.C. § 1920(1) and (5), we think that the district court erred in taxing as costs the expenses incurred by the Hospital in connection with the services of the lawyer who presided at the hearings and the services of the court reporter who was employed to report the hearings, including the cost of a transcript of the hearings.

The question of allowing such items of expenses to be taxed as costs addresses itself to the discretion of the trial court in the first instance. *See Cox v. Maddux,* 285 F.Supp. 876 (E.D.Ark.1968), and cases there cited. Here, we are convinced that the district court abused its discretion when it included the items in question in the defendants' cost bill.

The amount of money involved is obviously substantial, and we think that it must be recognized that plaintiff's loss of his staff status, which loss we uphold today, may well have a severe impact upon him financially. The record reflects that plaintiff was entitled to a hearing under the Hospital's own rules and regulations, and that he would have been given a hearing in due course even if he had not filed the suit. Whether plaintiff would have been required to pay the expenses of a hearing other than a court ordered hearing we do not know, but we do not think that he should be charged with those expenses simply because they were incurred by the Hospital within the framework of this suit or because the hearing was held pursuant to an order of the district court which order merely confirmed the independent obligation of the Hospital.

As far as costs are concerned, the case is remanded to the district court with directions to eliminate the expenses in question from the cost bill. In all other respects the judgment appealed from is affirmed.