Tony STERMETZ, Plaintiff,

v.

Judge W.R. HARPER and Sebastian
County, Arkansas, Defendants.

Civ. No. 84–2100.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

June 28, 1984.

On Reconsideration July 23, 1985.

Gregory T. Karber, Pryor, Robinson & Barry, Fort Smith, Ark., for plaintiff.

David P. Saxon, Deputy Pros. Atty., Fort Smith, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Plaintiff, a former employee of Sebastian County, Arkansas, filed this suit pursuant to the provisions of 42 U.S.C. § 1983, alleging that certain of his constitutional rights were violated by the County's termination of his employment.

Specifically, it is alleged that on April 5, 1983, the plaintiff was informed by County Judge W.R. Harper that his employment with Sebastian County was terminated effective that date. At that time, plaintiff was presented by Judge Harper with a document entitled "Notice of Termination" attached as Exhibit A to the complaint. The notice provides:

Violation of Code of Ethics, Article II, Sections A and B. Violation of Article VII, section C–q. Dishonesty. Conduct under the above sections specifically apply to dishonesty in the fraudulent filing of insurance claim under the County's group plan in filing of medical bills not related to personal expenditures for medical expenses incurred.

The next day, plaintiff after having conferred with Attorney Douglas W. Parker, presented to Judge Harper an affidavit which was attached as Exhibit B to his complaint. In the affidavit, the plaintiff essentially denied any wrongdoing in relation to the filing of insurance claims. In addition, attached to the complaint is a copy of the Sebastian County Employment Policies & Procedures, and a copy of a letter dated April 6, 1983, written by his attorney requesting that the grievance pro-

cedure set forth in the Policies be employed.

It is alleged that the defendant county did not comply with certain of the "steps" set forth in the grievance procedure, but that the county ultimately provided the plaintiff with a hearing held on February 24, 1984. A copy of the order of the Grievance Committee appointed pursuant to the provisions of the Policies & Procedures is attached to the complaint as Exhibit E.

It is claimed that plaintiff was damaged by reason of the county's failure to comply with steps 1, 2 and 3 of article VIII of the Procedures and that the Grievance Committee's finding that there was substantial evidence to support the termination was not justified in view of the evidence adduced at the hearing.

It is claimed that plaintiff had a property right in his employment which entitled him to be terminated only upon a showing of just cause, and that his termination resulted in a denial of property rights without due process of law in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. He asks for a declaratory judgment pursuant to the provisions of 28 U.S.C. § 2201, for damages in the amount of $25,000.00, for back pay, fringe benefits, attorney's fees, and reinstatement to his former position.

Defendants filed a motion to dismiss, attaching to the motion a six-page document entitled "Grievance Committee Guidelines." This document very specifically sets forth the procedures used by the Grievance Committee during the hearing which will be discussed in more detail below.

Upon reviewing the file in preparation to rule upon the motion, the court determined that the guidelines attached to the motion to dismiss should be considered, along with the exhibits attached to the complaint, and, for this reason, by letter dated May 11, 1984, advised the parties that the court intended, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to treat the motion to dismiss as a Rule 56 motion. The parties were given 14 days from the date of that letter to present any material relevant to the court's consideration of the issues as required by the rule under the circumstances presented.

Within the time allowed, the plaintiff filed an amendment to response providing the court with the transcript of the proceedings before the Grievance Committee held on February 24, 1984, an affidavit by Mr. Stermetz, and the exhibits received by the Grievance Committee. In the affidavit attached to the amendment, Mr. Stermetz swears that it was his understanding, not only because of the content of the Employment Policies & Procedures, but because of conversations with various officials, that his employment was controlled by the Sebastian County Employment Policies & Procedures.

The court believes that the file as it now exists, having been supplemented by the attorneys for the parties as desired, reflects clearly that there is no genuine issue of any material fact relevant to a determination of the issues raised. There is no contention by either party that the plaintiff was not, in fact, an employee of Sebastian County, Arkansas, and that he was terminated by the County Judge on April 5, 1983. There is no question but that at the time the county had in force employment policies and procedures as set forth on Exhibit D to the complaint, and that on February 24, 1984, a Grievance Committee appointed pursuant to the provisions of such policies, after a request by plaintiff's attorney, held a hearing which resulted in the order attached as Exhibit E to the complaint.

As indicated above, plaintiff's attorney, pursuant to the court's notice that the file should be supplemented if desired, filed the 156-page transcript of the Grievance Committee hearing taken and prepared by an official court reporter. The court has read the entire transcript, and it is obvious that the committee, chaired by Ben Core, a Fort Smith attorney, carefully and meticulously received all evidence which either party had to offer in relation to the controversy. The committee, composed of Mr. Core and four other prominent Sebastian County resi-

dents, competently and courteously allowed Mr. Karber, representing the plaintiff, ample opportunity to develop his case. He was allowed to make an opening statement to the committee, present any evidence that he cared to present, and then present closing arguments. In addition, he was allowed, throughout the hearing, to make statements into the record setting his forth his contentions in relation to the facts and applicable law. In short, plaintiff and his attorney were not restrained in any way from presenting their case. Before any evidence was received, the chairman carefully discussed the provisions of the Grievance Committee Guidelines which were attached to the motion to dismiss. It is obvious from a mere reading of these guidelines that they were thoughtfully prepared and were designed to protect the rights of any grievant before the committee. It is obvious from the transcript of the proceedings that the chairman carefully followed the guidelines and made certain before any evidence was taken that the grievant and his attorney were aware of the procedures to be followed.

The transcript indicates that the individual Grievance Committee members conscientiously approached the task at hand and cordially refrained from interrupting the testimony of any witness until the attorneys presenting the testimony had completed their questioning. The committee members then, in many cases, asked pertinent and intelligent questions bearing on the issues.

During the course of the hearing, after certain stipulations were entered into, the defendant testified, with his testimony consisting of some 34 pages of the transcript. He then called in his behalf his wife, Lenora Stermetz, whose testimony encompassed another 34 pages. At the close of the testimony of these two witnesses, the committee recessed for lunch, and after resuming, the committee chairman asked Mr. Karber, "Do you have anything else to present?" Mr. Karber replied, "That concludes our presentation." The county was then allowed to call witnesses in its behalf, and at the close of the county's testimony,

Mr. Karber was again asked by the chairman if he had anything further to present. He replied that he did not, but that he wished to make closing remarks. The attorneys for plaintiff and the defendants were then allowed to make closing statements. After these were received, the committee chairman carefully advised the parties and their attorneys of the procedures to be followed and then went into executive session to discuss the matter.

Upon reconvening in open session, the chairman again advised those present of the procedure to be followed, and pointed out that article VIII of the Policies provided that the committee's duty was only to determine whether the penalty assessed (termination) was "unreasonable or discriminatory."

The committee then separately voted on the following questions: (1) Was there dishonest conduct? (2) Was Mr. Stermetz responsible for the dishonesty? (3) Was the penalty assessed unreasonable? (4) Was the penalty discriminatory? The roll was called on each of these questions, and the committee members individually voted. The vote was unanimously against plaintiff's position on each question.

Whereupon, according to the transcript, the chairman advised those present that "that is our decision," and apparently attempted to give Mr. Karber an opportunity to speak in behalf of his client, but, according to the transcript, was interrupted and the hearing was adjourned. The committee then, on March 6, 1984, filed its order which was attached as Exhibit E to the complaint.

Plaintiff apparently does not contend that he was not given the hearing contemplated by the Employment Policies & Procedures, or even that the hearing was not "a fair one." Instead, he takes the position that the committee which gave him the hearing provided for in the Policies and the hearing that he requested through his attorney was simply "wrong" and that for that reason he has been deprived of property without due process of law in violation

of the Constitution. He apparently asks this court to review and weigh the evidence and, in effect, substitute the court's judgment for that of the county officials and the Grievance Committee established pursuant to county policy. In so doing, he misapprehends the role of federal courts.

■ The drafters of our Constitution, very wisely in the court's view, determined that federal courts would be courts of limited jurisdiction. On the other hand, most state courts, under the system installed by our forefathers, are courts of general jurisdiction. Federal courts are empowered to hear only those cases that (1) are within the judicial power of the United States as defined in the Constitution, and (2) that have been entrusted to them by a jurisdictional grant by the Congress.

As the Supreme Court said in *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971): "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that those courts scrupulously confine their own jurisdiction to the precise limits that a federal statute has defined."

■ The rule clearly is that the party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the competence of that court, and the presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists. *Lehigh Mining & Mfg. Co. v. Kelly*, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444 (1895); *King Iron Bridge & Mfg. Co. v. County of Otoe*, 120 U.S. 225, 7 S.Ct. 552, 30 L.Ed. 623 (1887); *Yocum v. Parker*, 130 F. 770 (8th Cir.1904).

■ In short, a proper reading of the Constitution and legislation intended to carry into effect its provisions does not allow a federal court to decree all that is right and condemn and bar all that is wrong, or what a particular judge believes is either right or wrong, even if that judge desires to. This court was not intended to

be a super county administrator or county board which, in the comfort of its chambers, reviews the actions of county officials to determine if what they have done is "right."

Instead, this court is confined to determining whether any of plaintiff's "federally protected rights" have been violated. In this regard, plaintiff contends that he had a property right in his employment which was denied him without due process of law, apparently because the decision of the county officials and Grievance Committee allowed his employment to be terminated without substantial evidence to support the charge of dishonesty made against him. As indicated above, there is apparently no contention made by him that he did not receive a fair hearing—only that the result was wrong.

The court is aware of two lines of cases which arguably, at least, entitle plaintiff to a due process hearing in relation to the termination of his employment. The Supreme Court, in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), held that where a public employee has either a contractual right to his employment or an otherwise legally enforceable expectancy of continued employment he has a property interest in such employment protected by the due process clause of the Constitution. To cite the progeny of these cases would require a list of several pages.

Another line of cases holds that even where no property interest is involved in public employment, a public employee's constitutionally protected right to "liberty" may be protected by the due process clause of the Constitution "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him...." *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1966). In *Board of Regents v. Roth, supra*, the Court stated that where the state "imposed ... a stigma or other disability that foreclosed ... freedom to take advantage of other employment oppor-

tunities" the safeguards of notice and hearing are required. In discussing the type of allegation that might be "stigmatizing," *Roth* referred to charges of dishonesty and immorality, distinguishing these charges from simple failure to rehire an individual where there is no disclosure of allegations which would adversely affect the individual's future opportunities for employment.

■ Defendants argue in this case that plaintiff had no property interest in his employment. The court believes that the county employment policies and procedures did give plaintiff sufficient expectation of continued employment to grant to him a property interest in his employment, but even if that was not true, the court believes that the manner of his termination and the cause for it brings into play the "liberty" interest discussed in *Wisconsin v. Constantineau, supra,* and *Board of Regents v. Roth, supra.* Plaintiff alleged only that a property interest was violated, and apparently does not argue that a liberty interest is involved. In any event, the court finds that plaintiff was entitled to a due process hearing in relation to his termination either because of the protection afforded by the Constitution of property interest, or plaintiff's right not to be terminated for "stigmatizing" reasons without the opportunity to "clear his name."

■ The question then arises whether the hearing provided to plaintiff provided him with procedural and substantive due process guaranteed by the Constitution. The United States Supreme Court has held that no particular form of procedure is required, but that certain elements must be present. *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). These include, at least, (1) adequate notice, *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); (2) adequate opportunity for a hearing, *Armstrong v. Mingo,* 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); (3) the right to introduce evidence, *Baltimore & Ohio R.R. Co. v. United States,* 298 U.S. 349, 56 S.Ct. 797, 80 L.Ed. 1209 (1936); and (4) the right to confront and cross-examine witnesses,

*Wolfe v. McDonell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The court has already set forth the meticulous and careful manner in which plaintiff's rights were protected by the Grievance Committee as shown by the hearing transcript which is a part of the record, and it would serve no useful purpose to discuss each of the specific requirements for procedural due process delineated above in relation to what occurred at the hearing. Suffice it to say that the court believes that the transcript of the hearing clearly and convincingly shows that the plaintiff was provided every measure of procedural due process and that he and his attorney had ample opportunity to present their case and to attempt to convince the committee that the action of the County Judge in terminating him was "unreasonable or discriminatory."

■ Not only is it abundantly clear from the transcript which is part of the record that the plaintiff was provided with procedural due process, it is equally clear that he was provided substantive due process as well. As the court has already indicated, the transcript shows that the committee members approached their work in a professional and diligent manner and reached their conclusion only after having courteously and cordially given plaintiff every opportunity to present his case. They carefully followed the procedures outlined and made known to the attorneys for the parties before the hearing started, and reached their conclusion based upon the evidence, after having had the advantage of seeing and hearing the witnesses testify and being able, thus, to determine credibility and weigh the evidence. In view of the fact that the record clearly establishes that the plaintiff received a fair hearing in this case, the only way that this court could decide that this case should continue would be for it to review the transcript and, without the benefit of seeing the witnesses testify, determine that the committee was simply "wrong." That is not this court's function. All that this court is allowed to do under the Constitution, statutes, and case law interpreting them is to determine

(1) whether plaintiff was entitled to a due process hearing in relation to his termination, and (2) whether, if he was, such hearing was afforded him. After having determined that he was entitled to a hearing and that he got an eminently fair one, the court's function is complete. The court finds that the transcript indicates without question that the Committee's determination was supported by substantial evidence, and it cannot and will not substitute its judgment for the judgment of the county officials and duly appointed Grievance Committee. *Lewes Dairy, Inc. v. Freeman*, 401 F.2d 308 (3rd Cir.1968).

The Rule 12 motion, having been considered as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the parties having been given the opportunity as required by the rules to supplement the record as desired, finds that there is no genuine issue of any material fact and that the defendants are entitled to judgment as a matter of law. The court does this fully recognizing that motions for summary judgment have largely fallen in disfavor in many trial courts because of the general belief that the various courts of appeal will, more than likely, reverse the granting of almost every summary judgment, or at least that the odds are very great that this will occur. This court believes that this feeling results, at least partly, from a misunderstanding of the proper role of Rule 56. As is pointed out in Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2712 at 574: "A motion for summary judgment lies only when there is no genuine issue of material fact; summary judgment is not a substitute for the trial of disputed fact issues." As that article points out, the trial courts are thus not permitted to try disputed issues of fact in ruling on a Rule 56 motion, but may determine only whether there are such issues of fact to be tried. The court firmly believes that if there was ever a case in which a summary judgment is warranted, this is it. No one contends that the facts in relation to the hearing provided are other than as set forth above. Plaintiff was terminated by the County

Judge; he hired an attorney; his attorney asked that the grievance procedures be followed which resulted in a hearing before a duly appointed Grievance Committee; he obviously had adequate notice of such hearing; he was present at the hearing with his retained attorney; the attorney was given an opportunity to make opening statements, to argue during the presentation of his case, to present his witnesses, and to cross-examine the county's witnesses, and to make closing arguments. In short, plaintiff got what he asked for—a hearing—and the hearing was eminently fair. His complaint is that he lost, and he now wants this court to retry the case and to determine that the county officials and Grievance Committee were wrong. The Constitution guaranteed plaintiff under the circumstances that he would not be terminated without being provided a procedurally and substantively fair hearing—not that the decision-maker would be "right." The court believes, based on the transcript, that the decision-makers were "right," but that is beside the point.

The courts have stated the purpose of Rule 56 in a variety of ways: that the rule intended to prevent vexation and delay, *Chambers v. U.S.*, 357 F.2d 224 (8th Cir. 1966); that it is intended to improve the machinery of justice, *Bland v. Norfolk and So. R.R. Co.*, 406 F.2d 863 (4th Cir.1969); that it is intended to promote the expeditious disposition of cases, *Chambers v. U.S., supra;* that its purpose is to avoid unnecessary trials, *U.S. v. Porter*, 581 F.2d 698 (8th Cir.1978); *Anderson v. Viking Pump Division, Houdaille Industries, Inc.*, 545 F.2d 1127 (8th Cir.1976); *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207 (8th Cir.1976); *Klinge v. Lutheran Charities Ass'n of St. Louis*, 523 F.2d 56 (8th Cir.1975); *Chambers v. U.S., supra;* and *Parmelee v. Chicago I. Shields Co.*, 157 F.2d 582 (8th Cir. 1946). The court firmly believes that all of those reasons for Rule 56 are met in this case. There is not the slightest doubt about the facts in relation to plaintiff's right to a hearing in relation to his termi-

nation, and it would unnecessarily prolong this case for the court to overrule the motion and allow expensive discovery and other pretrial procedures to fully develop. If all of that was done, and the necessary time and expenses consumed to do so, the facts still would be that plaintiff was terminated, he asked for a hearing, he got one, and the Grievance Committee, after due and proper consideration of the matter, affirmed the county official's termination of plaintiff, based on obviously substantial evidence.

A judgment will be entered in conformity with this opinion.

## ON RECONSIDERATION

The pertinent facts are set forth in this court's memorandum opinion of June 28, 1984, and will not be reiterated herein except as essential to the instant analysis.

On June 28, 1984, this court granted summary judgment in favor of defendants on plaintiff's complaint which alleged various due process violations in connection with plaintiff's termination from his employment with Sebastian County. Plaintiff appealed to the Eighth Circuit Court of Appeals on July 20, 1984. While the appeal was pending, the United States Supreme Court decided *Cleveland Board of Education v. Loudermill*, 470 U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). On June 6, 1985, 763 F.2d 366, the appeal court's decision in this case was released, vacating this court's entry of a summary judgment and remanding the cause to this court for reconsideration in light of *Loudermill*.

By letter dated June 18, 1985, this court advised the parties to supplement the record and brief the issues in light of *Loudermill*. The requested materials have now been submitted and the matter is ripe for resolution.

Essentially plaintiff alleges that he was informed on April 5, 1983, by defendant Harper that his employment as a laborer with Sebastian County was terminated effective that date. Plaintiff was presented with a document entitled "Notice of Termination." That notice stated the reasons for the termination, including the fraudulent filing of falsified insurance claims under the county's group plan. Plaintiff was informed that such conduct constituted violations of Article II, Sections A and B, and Article VII, Section C–q, of the Code of Ethics.

The next day, after plaintiff had conferred with attorney Douglas Parker, plaintiff presented to defendant Harper an affidavit which essentially denied any wrongdoing in relation to the insurance claims. Plaintiff alleged that the defendant county failed to comply with certain provisions of the Sebastian County Employment Policies and Procedures. The county did provide plaintiff with a hearing on February 24, 1984. Plaintiff has contended that he had a "property" interest in his employment which entitled the county to terminate him only upon "just cause."

Plaintiff now argues that he did not receive notice of any charges prior to his termination, an explanation of the county's evidence, nor an opportunity to present his explanation. Additionally he asserts that the pretermination meeting was inadequate in light of the subsequent process afforded to plaintiff.

In *Loudermill* the Court held that the due process clause requires " 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Loudermill, supra*, 470 U.S. at ——, 105 S.Ct. at 1493, 84 L.Ed.2d at 504. Further, an employee is entitled to some opportunity "to present his side of the case." *Loudermill, supra*, 470 U.S. at ——, 105 S.Ct. at 1494, 84 L.Ed.2d at 504. The pretermination hearing "though necessary, need not be elaborate." *Loudermill*, 470 U.S. at ——, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. " 'Something less' than a full evidentiary hearing" is sufficient. *Loudermill*, 470 U.S. at ——, 105 S.Ct. at 1495, 84 L.Ed.2d at 506.

The pretermination hearing should be an "initial check against mistaken decisions— essentially, a determination of whether

there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill,* at ——, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. The hearing need not definitively resolve the propriety of the discharge.

■■■ In concise terms, all that the due process clause requires is "oral or written notice of the charges against (the employee), an explanation of the employer's evidence, and an opportunity to present his (the employee's) side of the story." *Loudermill,* at ——, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. A post-termination administrative proceeding must, of course, be held "at a meaningful time." *Loudermill,* at ——, 105 S.Ct. at 1496, 84 L.Ed.2d at 507. The Supreme Court held that "the existence of post-termination procedures is relevant to the necessary scope of pretermination procedures." *Loudermill, supra,* at ——, 105 S.Ct. at 1496 n. 12, 84 L.Ed.2d at 507 n. 12.

The Court of Appeals for the Eighth Circuit upheld this court's decision with regard to plaintiff's substantive due process claim. *See Stermetz v. Harper,* 763 F.2d 366, 367 (8th Cir.1985). The court further upheld this court's finding that plaintiff was given an opportunity to present his side of the story prior to termination. *See Stermetz, supra,* at 368.

This case was remanded to this court with directions for this court to evaluate the adequacy of the pretermination hearing in light of the subsequent process provided plaintiff. *Stermetz, supra.* The exhibits submitted indicate that plaintiff was provided both oral and written notice of the charges prior to his termination. *See* paragraph 2 of plaintiff's Complaint; pp. 27–32 and 40–41 of "Grievance Hearing." He was told of the reasons for his termination and was afforded an opportunity to respond. *See* pp. 32, 41 of "Grievance Hearing." Plaintiff failed to offer any kind of substantive explanation. Plaintiff did not explain, as he now does and did during the grievance committee hearing, that it was his wife who falsified the insurance claims. *See* p. 128 of "Grievance Hearing."

Plaintiff argues that the eleven-month delay following his termination before the grievance hearing was held renders the pretermination hearing constitutionally "infirm." "... [T]he previously inadequate pretermination hearing was not made constitutionally adequate by the long-delayed subsequent hearing ...." (Plaintiff's brief on remand, pp. 18–19.)

It is clear that at some point, "a delay in the post-termination hearing would become a constitutional violation." *Loudermill,* 470 U.S. at ——, 105 S.Ct. at 1496, 84 L.Ed.2d at 507. However, unless the delay itself rises to the level of a deprivation of due process, the post-termination procedures are relevant only insofar as they demonstrate the "necessary scope of pretermination procedures." *Loudermill, supra,* at ——, 105 S.Ct. at 1496 n. 12, 84 L.Ed.2d at 507 n. 12.

The post-termination hearing was held on February 24, 1984, before a grievance committee chaired by Fort Smith attorney, Ben Core. Plaintiff, represented by Mr. Karber, made an opening statement, presented all of the evidence he desired to introduce, made numerous statements into the record concerning his contentions of fact and arguments of law, and was allowed to make a closing argument. The transcript of the hearing is comprised of 156 pages prepared by a court reporter. The transcript clearly demonstrates that the committee listened to absolutely everything that plaintiff had to offer. The chairman discussed thoroughly the grievance committee guidelines. Those guidelines appear to be more than adequate to protect the rights of any grievants and designed to elicit the truth of any disputed matters. The guidelines were followed and plaintiff and his attorney were made aware of the procedures to be utilized prior to the hearing. The committee members supplemented the questioning of witnesses by the attorneys, asking additional questions.

The testimony of plaintiff and his wife comprise 68 pages of the transcript. Other

than arguments, opening and closing remarks, and stipulations, plaintiff stated clearly that he had nothing else to present. Plaintiff made only closing remarks at the close of the county's testimony.

The committee voted unanimously (five votes concurring) that plaintiff was responsible for the conduct which was unanimously found to be dishonest in nature. The committee also unanimously found that the penalty was neither unreasonable nor discriminatory. Not only does the court believe that the grievance hearing was more than "fair," the court is unable to conclude that the unanimous decision reached was "wrong."

Thus, not only was the hearing "fair," the decision is clearly supported by the record. The transcript clearly demonstrates to this court's satisfaction that plaintiff was given notice of the charges prior to his discharge, was apprised of the bases for the charges, and was provided an opportunity to explain "his side of the story." The grievance hearing was more than sufficient to "cure" any factual doubt remaining after plaintiff was provided the pretermination "initial check against (a) mistaken decision(s)." *Loudermill, supra,* at ——, 105 S.Ct. at 1495, 84 L.Ed.2d at 506.

■ Therefore, the court concludes that the in-depth post-termination procedures utilized clearly demonstrate that the pretermination procedure provided was sufficient in scope to satisfy the requirements of *Loudermill.* Unlike *Loudermill,* however, this is not, or does not appear to be, a case in which an error might have been avoided had the plaintiff been given more of an opportunity to make his case prior to termination. *See Loudermill,* at ——, 105 S.Ct. at 1494 and n. 8, 84 L.Ed.2d at 505 and n. 8.

Although plaintiff, rather unchivalrously, now seeks to "palm-off" all of the responsibility for the criminal misdeeds on his wife, the committee found that plaintiff cannot, with impunity, delegate away all of the responsibility for the fraudulent documents. The Court of Appeals for the Eighth Circuit found the committee's ap-

proach on this point not to be irrational, "pretextual, arbitrary, or capricious." *Stermetz, supra,* at 376. Accordingly, plaintiff is not in a position to assert that he had plausible arguments to make that might have prevented his discharge. *See Loudermill, supra,* at ——, 105 S.Ct. at 1494, 84 L.Ed.2d at 505. The committee found plaintiff's explanation, even if true, insufficient to demonstrate that plaintiff should not have been terminated.

■ Plaintiff finally argues that the ten and one-half months delay between his termination and the grievance committee hearing violates the requirements of due process. In *Loudermill* the court rejected a similar argument premised upon a nine-month administrative delay, stating that a

9-month delay is not, of course, unconstitutionally lengthy per se. Yet Loudermill offers no indication that his wait was unreasonably prolonged other than it took nine months. The chronology of the proceedings set out in the complaint, coupled with the assertion that nine months is too long to wait, does not state a claim of a constitutional deprivation.

*Loudermill, supra,* at ——, 105 S.Ct. at 1496, 84 L.Ed.2d at 507.

■ Plaintiff also argues that defendants failed to observe the county's own administrative guidelines and grievance procedures. It is clear, however, under Arkansas law, that a County Judge is not bound by the county grievance procedures. *See* Arkansas Constitution, amend. 55, § 3. *Horton v. Taylor,* 767 F.2d 471, 479–480 (8th Cir.1985). In any event, it is clear to the court that the policies were substantially followed, and that none of plaintiff's "due process" rights were violated.

Although there were veiled references to a possible criminal prosecution during the interim period, plaintiff does not specifically allege any prejudice caused by the delay. Even in a criminal case, a delay has been held not to implicate a violation of the due process clause unless the defense of the case has been prejudiced. *United States v.*

*Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1976). Even where prejudice is present, however, the reasons for the delay must be considered, and any delay will be held insubstantial unless the prejudice clearly outweighs the legitimate reasons for the delay. *Lovesco, supra.*

The record indicates that once the county and defendant Harper were made aware that plaintiff was represented by counsel, defendant Harper "recapped" the pertinent facts with plaintiff's then counsel by letter dated June 23, 1983. Plaintiff's counsel did not communicate with defendant Harper again until August 30, 1983. Although there was no immediate response, plaintiff's counsel waited until October 20, 1983, to again bring the matter to the defendants' attention. After two of these communications on behalf of the plaintiff, the matter was referred to the county's attorney.

All of the reasons for the delay are not apparent. Plaintiff informed defendant Harper in writing on April 6, 1983, that he challenged the allegations (see Exhibit "B" to plaintiff's complaint). Plaintiff did not take any further action until June 16, 1983, two and one-half months later, to which defendant Harper replied with the June 23 "recap" letter. Plaintiff waited more than two months before again writing to the defendant on August 30, 1983. When no formal response was forthcoming, plaintiff again waited almost two additional months before contacting defendant Harper on October 20, 1983. Plaintiff admits that two of the letters prompted a referral to the county's attorney.

Thus, although the period of delay has not been explained in its entirety, it is clear that some of the delay is attributable to plaintiff's formally contacting defendant Harper only three times in the six months following the April 6 letter. The only prejudice alleged to flow from the delay is that "all the while Stermetz was not receiving the pay and having to overcome the chilling effect of threats of prosecution." (Plaintiff's Post-Trial Brief, p. 20.)

Because plaintiff received a constitutionally sufficient pretermination hearing which was clearly adequate in light of the subsequent process afforded plaintiff, and because the defendants had sufficient reason to discharge the plaintiff, plaintiff's lack of pay in the interim period is not constitutionally significant.

Further, because imposition of criminal liability arising from plaintiff's conduct may be warranted, considering both the evidence at defendants' disposal prior to the termination and the evidence presented during the grievance committee hearing, the "chilling effect" was occasioned not by the delay, but by plaintiff's responsibility for the fraudulent conduct at the outset. Since nothing which transpired at the grievance committee hearing negated any of this possibly criminal responsibility, it is possible that plaintiff continues to be "chilled." Such "chill," however, was brought about by the actions of plaintiff and allegedly his wife, rather than by defendants, the grievance committee, or this court.

Suffice it to say that plaintiff has not demonstrated sufficient prejudice caused by the interim delay, under the circumstances, to constitute a violation of the due process clause, nor has he indicated that the delay was occasioned by the defendants to gain an undue advantage or with an improper motive to harm or injure the plaintiff in the presentation of his grievance or in any other manner.

Thus, the court concludes that neither *Loudermill* nor *Stermetz, supra,* are a bar to the entry of summary judgment in favor of the defendants. The court reaffirms all portions of its earlier memorandum opinion of June 28, 1984, not specifically discussed herein.

A separate judgment in accordance with this memorandum opinion will be concurrently entered.