857 F.2d 1469
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Vincent S. TOUSSAINT, M.D., Plaintiff-Appellant,
v.
LAURENS COUNTY HEALTH CARE SYSTEM, and Russell Emerson,
Edward M. Corley, Walter A. Sigman, W. Paul Culbertson, L.W.
McClain, Michael R. Meeks, James L. Walker, Reese Young,
James G. Ferguson, W.M. Wiley, individually and in their
official capacity as members of the Board of Directors of
Bailey Memorial Hospital, and; Clem P. Ham, individually
and in his official capacity as Administrator of Bailey
Memorial Hospital, and; Akhtar Hussain, M.D., individually
and in his official capacity as Chief of the Medical Staff
at Bailey Memorial Hospital and as a member of the Executive
Committee of Bailey Memorial Hospital, and; Bruce Marshall,
M.D., individually and in his official capacity as a member
of the Executive Committee of Bailey Memorial Hospital and
as Chief of Service for Pediatrics at Bailey Memorial
Hospital, and; Stephen Ramsay, M.D., individually and in
his official capacity as a member of the Executive Committee
of Bailey Memorial Hospital and as Chief of Service for
Pediatrics at Bailey Memorial Hospital, and; Arvin Raheja,
M.D., individually and in his official capacity as Chief of
service for both Surgery and Obstetrics at Bailey Memorial
Hospital, Defendants-Appellees.
 No. 88-3903.
 United States Court of Appeals, Fourth Circuit.
 Argued: July 25, 1988.
Decided: Sept. 7, 1988.
 
 Pamela Larkin Mims (Cameron B. Littlejohn, Jr., Lewis, Babcock, Pleicones & Hawkins; Randall M. Chastain, University of South Carolina School of Law, on brief), for appellant.
 John Michael Turner (Culbertson, Whitesides & Turner; C. Dewey Oxner, III, Haynsworth, McKay & Guerard, on brief), for appellees.
 Before DONALD RUSSELL, WIDENER and K.K. HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is an action under 42 U.S.C. Sec. 1983, by a physician asserting a due process violation by a publicly-owned hospital for suspending his hospital staff privileges for a period of thirty days on two separate occasions. The case was heard by the district judge without a jury. The district judge made extensive findings of fact and stated conclusions of law. On the basis of these findings of fact and conclusions of law, he granted judgment in favor of the defendants. From that judgment this appeal is prosecuted. We affirm.
 
 
 2
 The plaintiff is a certified surgeon. Since 1976 he has resided in Clinton, South Carolina, and has been during all that time a member of the medical staff at the Bailey Memorial Hospital, then a publicly-owned and operated hospital in Clinton known as the Bailey Memorial Hospital and now a part of the Laurens (County, South Carolina) Hospital County Health Care System (hereinafter Laurens), owned by Laurens County, a political entity of the State. During his years on the staff, he has had a number of disputes with the hospital and its medical staff over his acts as a member of the staff. Five of these disputes resulted in orders of suspension of his hospital privileges for short periods of time and one an order of restriction placed on his medical activities in certain areas at the hospital. The first of these incidents was in January, 1981, when the staff privileges of the plaintiff and another physician were summarily suspended, an action which on appeal was lifted with a continuing admonition that the two should "exercise greater care on future admissions to insure that the medical needs of the patients were being adequately met." The second incident in mid-July, 1983, involved a summary suspension, which was again lifted after a hearing followed by a release by the plaintiff of Laurens and all parties of any claim on account of this suspension. In April, 1986, the plaintiff was given a summary suspension which lasted three days. When plaintiff's appeal was heard, the suspension was lifted. This suspension arose out of a charge of another physician and staff member, complaining of an alleged unauthorized and unprofessional interference by the plaintiff in the case of a patient under the care of the complaining physician. There was also a complaint about the plaintiff's treatment of newborn babies. It was suggested that some restriction be placed on the plaintiff in his treatment of new-born babies but this suggestion was never actually implemented. This review brings us to the two incidents, occurring in latter-1986, which led to the filing of this action and which are the real subject of the action.
 
 
 3
 The plaintiff performed, in November, 1986, three mastectomies on three teen-age males. It was charged that plaintiff had violated traditional medical standards of care in performing and reporting such operations. An ad hoc committee was appointed to investigate the charge. The committee had a hearing at which the plaintiff appeared and was heard. The committee recommended a 30-day suspension because the plaintiff had allegedly failed to conform with recognized standards of care and reporting. The plaintiff was advised of this action.
 
 
 4
 About one month later, following an inquiry by the County Coroner, the administrator of the hospital filed a request for corrective action against plaintiff. The administrator's complaint involved a patient, Sally Hunter, who was admitted to the hospital with a head injury and in a heavily inebriated and boisterous condition. The plaintiff prescribed medication for the patient over the telephone but did not come to the hospital to see the patient. Later on the night of the patient's admission, a hospital nurse called the plaintiff about the patient's disruptive conduct. Without seeing the patient, the plaintiff directed the discharge of the patient. Several hours after her discharge, the patient died. The plaintiff was notified that a further suspension of 30 days would be imposed for this alleged failure. The plaintiff at this point filed this action, and the suspensions under the two charges were never implemented.
 
 
 5
 The plaintiff has filed three complaints stating alleged violations of his substantive and procedural due process rights of the Federal Anti-trust Act, and of the Federal and State Trade Acts, as well as actions for business disparagement and libel and slander. The action was disposed of by the district judge on motions for summary judgment. In a carefully considered decision, he dismissed all the motions as without merit. The plaintiff has appealed that decision. At the hearing before us, he limited his appeal to the section 1983 action for violation of his substantive and procedural due process rights.
 
 
 6
 There is no dispute between the parties that plaintiff's hospital privileges could not be suspended or terminated in violation of his substantive and procedural due process rights. Duffield v. Charleston Area Medical Center Inc., 503 F.2d 512, 515 (4th Cir.1974); Christhilf v. Annapolis Emergency Hospital Ass'n., 496 F.2d 174, 180 (4th Cir.1974). The plaintiff's claim of violation of substantive due process is premised on the contention that the standards under which the decision whether to suspend the plaintiff's staff privileges was made "were impermissibly vague and arbitrary/non-existent." The Special Ad Hoc Hearing Committee, constituted under an agreement of the parties to dispose of the proposed suspensions of October and November, 1987, stated clearly the standard it was applying:
 
 
 7
 Much has been said about Standards of Practice. The Committee accepts a definition of a Standard of Medical Practice as being that manner of care or degree of skill which would be rendered by a reasonable physician under the same or similar circumstances. To the members of this Committee, Dr. Toussaint has been charged with violating two standards of practice that are so basic to the practice of medicine, that it is unlikely anyone would bother to write them down, namely, every surgical procedure will be justifiable and appropriate and no patient will be discharged without being seen and examined by the attending physician.
 
 
 8
 Addressing the two incidents themselves, the Committee said with reference to the charges involving the mastectomies:
 
 
 9
 It is our opinion, however, that evidence has been presented which shows that this is an operation whose indications vary considerably with different practitioners, is infrequently performed, and which has a high potential for abuse, and it is therefore incumbent on the surgeons who perform it to be meticulous in their record keeping, performance of a history and physical, and recording of any data by which the indications for and justification of a procedure will be evident to any peer review group. This is amply supported by the Accreditation Manual for Hospitals of the Joint Commission on Accreditation of Hospitals, 1986. (See Medical Record Services, 9.2, 9.2.1.2, 9.2.2.3, 9.2.2.2.1-4, 9.2.2.3.1, 9.2.2.3.5).
 
 
 10
 Reviewing the second incident involving the Hunter discharge, it said:
 
 
 11
 Relative to Sally Hunter, the committee finds no evidence to support violation of standards related to her care in the emergency room, admission, or admission orders.
 
 
 12
 It is our opinion, however, that evidence presented to us supports the charge that Dr. Toussaint knowingly discharged Ms. Hunter from the hospital without having seen or evaluated her in any way, that this is a violation of a very basic standard of medical care, and could be construed as negligence had there been any allegation of harm to the patient as a result of her manner of discharge.
 
 
 13
 The district judge, after fully canvassing the evidence, found that these standards followed and applied by the Committee met the requirements of substantive due process in the context of staff hospital privileges. After all, the law, as the district judge held, does not require the hospital staff to prescribe exact rules covering all phases of medical care with precision and exactness. This was declared authoritatively in Sosa v. Bd. of Managers of Val Verde Memorial Hospital, 437 F.2d 173, 177 (5th Cir.1971):
 
 
 14
 No court should substitute its evaluation of such matters for that of the Hospital Board. It is the Board, not the court, which is charged with the responsibility of providing a competent staff of doctors. The Board has chosen to rely on the advice of its Medical Staff, and the court cannot surrogate for the Staff in executing this responsibility. Human lives are at stake, and the governing board must be given discretion in its selection so that it can have confidence in the competence and moral commitment of its staff. The evaluation of professional proficiency of doctors is best left to the specialized expertise of their peers, subject only to limited judicial surveillance. The court is charged with the narrow responsibility of assuring that the qualifications imposed by the Board are reasonably related to the operation of the hospital and fairly administered. In short, so long as staff selections are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered with irrelevant considerations, a court should not interfere. Courts must not attempt to take on the escutcheon of Caduceus.
 
 
 15
 Sosa has been repeatedly cited as precedent on this point. See Klinge v. Lutheran Charities Ass'n, 523 F.2d 56, 62 (8th Cir.1975); Battle v. Jefferson Davis Memorial Hospital, 451 F.Supp. 1015, 1025 (S.D.Miss.1976), aff'd, 575 F.2d 298 (5th Cir.1978), among others. The standards for evaluating the plaintiff's performance in this context were observed by the Committee herein. The plaintiff presented evidence both before the peer committee and before this Court which was addressed directly to the factors stated by the peer committee as the standards of care applied by it in its decision herein. He is in no position to contend that he was in any way prejudiced in the slightest by a want of understanding of the standards of care which constituted the charges against him. Any claim of a denial of substantive due process herein is without merit.
 
 
 16
 As the district court has painstakingly outlined in its opinion, the plaintiff's procedural due process rights were faithfully observed. The final peer panel which heard and made the decision in this case was composed of three members drawn from a panel selected by the plaintiff himself.[1] He was fully advised of the charges against him and was given an adequate opportunity to provide his defense. The plaintiff has made no charge of incompetency or partiality on the part of any member of the Ad Hoc Committee. He could hardly do so in view of the fact that the members of the Committee had been in effect his selectees. Nor can he successfully complain that he was prevented in any way from presenting his answer to the charges. No more is required.
 
 
 17
 Since the plaintiff has not appealed the dismissal of his other claims, our conclusion that the plaintiff's substantive and procedural due process claims are unwarranted disposes of the appeal. The judgment of the district court dismissing the action is accordingly
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Branch v. Hempstead County Memorial Hospital, 539 F.Supp. 908, 911 (W.D.Ark.1982)